115 P.3d 731

**Gary W. CAMPBELL, Plaintiff–Appellant,**

v.

**Kim KILDEW, Defendant–Appellant,**

and

**Joseph M. Daltoso and Martha Corry Daltoso, husband and wife, and Bow Lake, LLC, an Idaho Limited Liability Company, Intervenors–Respondents.**

No. 29717.

Supreme Court of Idaho, Boise, February 2005 Term.

June 17, 2005.

Brady Law, Chartered, Boise, for appellant Gary W. Campbell. Glenda M. Talbutt argued.

Ellis, Brown & Sheils, Chtd., Boise, for appellant Kim Kildew. Allen B. Ellis argued.

Greener Banducci Shoemaker, PA, Boise, for respondents. Thomas A. Banducci argued.

SCHROEDER, Chief Justice.

Gary W. Campbell (Campbell) and Kim Kildew (Kildew) appeal from an order setting aside a judgment and decree that confirmed an arbitration award they had obtained. Joseph M. Daltoso, Martha Corry Daltoso, and Bow Lake, L.L.C. (the Daltosos) intervened and were granted a motion for relief from judgment pursuant to Idaho Rules of Civil Procedure, Rule 60(b), setting aside the confirmed award on the basis that Campbell and Kildew had committed a "fraud upon the court." Campbell and Kildew also appeal the district court's decision to sanction them under Idaho Rules of Civil Procedure, Rule 11(a)(1). The Daltosos ask the Court to affirm the district court's decisions and seek an award of attorney fees and/or sanctions on appeal.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Ada County Code (ACC) § 8–6–2(B) states that "[i]t shall be unlawful to a make a subdivision of property until the requirements of this chapter are satisfied." ACC § 8–6–2(B). Generally, Title 8 requires landowners to engage in a lengthy process involving a pre-application conference, neighborhood meetings, platting, a natural features analysis and obtaining approvals from various agencies prior to accomplishing a subdivision of property. ACC § 8–6–3 (2004). However, at the time of the events in this case, the ACC provided several exceptions to the subdivision process, including an exception for property subdivided by court order (the court decree exception). ACC § 8–6–2(C)(3).[1] Property subdivided under the court decree exception was required to be at least 40 acres with 100 feet of frontage.

Joseph M. Daltoso (Daltoso) and Gary W. Campbell (Campbell) are former owners of a development company, Table Rock Ranch, L.L.C. (Table Rock). After years of a souring business relationship, they entered into arbitration in October of 2001 to dissolve Table Rock and distribute its assets. During arbitration, Daltosos' attorney informed the parties about the ACC's court decree exception and advised them that a confirmed arbitration award would qualify for this exception. Daltoso and Campbell agreed to distribute Table Rock's real property assets in such a way as to create several new subdivisions between the parties. The arbitration award was later confirmed by a district court and qualified for the court decree exception.

Immediately following the Table Rock arbitration, Campbell partnered with Kim Kildew (Kildew), a neighboring large-scale Boise foothills developer, to form Wildhorse Ranch, L.L.C. The parties executed a Real Estate Development Operating Agreement (the Operating Agreement) for the alleged

1. The court decree exception has since been repealed.

purpose of transferring development rights to Sun Mountain Limited (Sun Mountain) via density bonus transfers. Density bonus transfers allow parties to transfer development rights between different landowners so long as the properties are contiguous with one another. Campbell owned approximately 147 acres and Kildew owned approximately 160 acres (the Subject Property) of Boise foothills property. The Operating Agreement included these properties as part of its assets, although the property had not yet been conveyed to the company. Not all of the Subject Property was contiguous with the Sun Mountain property. The Operating Agreement also provided that disputes between the parties would be resolved in arbitration pursuant to the Idaho Uniform Arbitration Act (UAA). An arbitrator was required to take into consideration the maximum economic benefit of the property in making any award. The parties were also obligated to have any arbitration award judicially confirmed.

On November 16, 2001, Campbell arranged for an engineer to prepare metes and bounds legal descriptions of the Subject Property. The descriptions split the Subject Property into 40-acre parcels with 100 feet of frontage. In late January or February of 2002, Campbell and Kildew asked attorney Andrew Hawes (Hawes) to serve as an arbitrator in the dissolution of Wildhorse and distribution of its property. Hawes accepted the offer although it was his first arbitration. The parties had three brief meetings, none of which were reflected in Hawes' billing records. Hawes later maintained that these meetings consisted of pre-arranged presentations from Campbell and Kildew as to how Wildhorse's property would be distributed. Following the hiring of Hawes, negotiations with Sun Mountain broke down due to an alleged conflict with the Boise Fire Department to provide fire services to the future development.

On January 28, 2002, Campbell entered into a Purchase and Sale Agreement (PSA) with Michael and Julia McMillen (McMillen) for the sale of a lot allegedly committed to Wildhorse as part of the Subject Property. Campbell signed a deed conveying the lot to McMillen on March 11, 2002. At the time of the sale the lot was not legally subdivided.

On March 28, 2002, Campbell and Kildew signed deeds finally conveying their individual properties to Wildhorse. The conveyance did not include McMillen's lot or another lot later identified as South Parcel B. That same day, Campbell and Kildew presented Hawes with a proposed arbitration award dividing Wildhorse's property into eight separate lots. The lot descriptions were similar to the metes and bounds descriptions Campbell had obtained in November of 2001. Hawes signed the award and Campbell and Kildew filed a Petition for Confirmation of the award on April 8, 2002 in district court. Judge Bail issued a Judgment and Decree confirming the award on April 16, 2002.

On May 30, 2002, counsel for Joseph M. Daltoso, Martha Corry Daltoso, and Bow Lake L.L.C. (the Daltosos) sent a letter to the Ada County Department of Development Services (ACDDS) questioning the legality of Campbell and Kildew's proposed subdivision of Wildhorse's property. The Daltosos owned property neighboring the Subject Property subdivided by Campbell and Kildew's arbitration proceeding. ACDDS determined that Wildhorse's property had been divided pursuant to a court order but that none of the parcels qualified for the court decree exception and could not be further subdivided outside the ACC subdivision process. ACDDS eventually retracted this decision, finding that the properties qualified for the court decree exception but could not be issued building permits because the arbitration award had divided the properties into "lots" rather than "parcels." The department offered four suggestions, however, as to how to convert the deficient properties into "buildable" parcels. Both the Daltosos and Campbell appealed this decision.

On October 17, 2002, the Daltosos filed a motion for relief pursuant to Idaho Rule of Civil Procedure 60(b) from the district court's Judgment and Decree confirming Campbell and Kildew's arbitration award. The Daltosos alleged that Campbell and Kildew had used a sham arbitration proceeding to circumvent the procedures outlined by the ACC for lawful subdivision and that such

conduct constituted a "fraud upon the court." Shortly following this motion, the Ada County Planning and Zoning Commission (ACPZ) denied the Daltosos and Campbell's appeals of the ACDDS's decision. The Daltosos appealed to the Ada County Board of Commissioners (ACBC). The outcome of that hearing is not shown in the Record. The Daltosos subsequently filed a motion to stay proceedings pending the outcome of county administrative hearings interpreting the ACC's court decree exception and deciding whether building permits would be issued for the Subject Property. Campbell and Kildew moved to strike and/or dismiss the Daltosos' motion for relief and motion to stay the district court proceedings. The district court ordered an evidentiary hearing into the matter.

Following an evidentiary hearing, the district court determined that the Daltosos had standing to challenge the judgment confirming the arbitration award. The district court also found by clear and convincing evidence that Campbell and Kildew had engaged in a sham arbitration for the sole purpose of subverting Ada County's zoning ordinances. The court additionally held that obtaining a judgment confirming the sham arbitration award constituted a fraud upon the court under Rule 60(b) of the Idaho Rules of Civil Procedure. The court ordered that the Judgment and Decree confirming Campbell and Kildew's arbitration award be set aside.

The Daltosos subsequently sought an award of attorney fees and costs under Idaho Code § 12–123 and moved for Rule 11 sanctions. The district court awarded the Daltosos their costs as a matter of right in the amount of $1,976.10 but did not award discretionary costs or attorney fees. The district court awarded sanctions against Campbell and Kildew in the amount of $15,000 under Rule 11.

Campbell and Kildew appealed. The Daltosos also appealed the award of sanctions and denial of their request for attorney fees. The appeals were consolidated. The Daltosos filed a motion for reconsideration with the district court. The district court granted the Daltosos' motion for reconsideration as to the sanctions amount, increasing sanctions to $60,000. The Daltosos then filed a notice of dismissal without prejudice as to their appeal. Kildew and Campbell each filed a second notice of appeal amending their claims to include an appeal of the district court's grant of the Daltosos' motion for reconsideration.

On appeal, Campbell and Kildew argue that the district court erred in finding that: (1) the Daltosos had standing to challenge the arbitration award, (2) the doctrine of unclean hands or equitable estoppel did not bar the Daltosos' claims, (3) they committed a fraud upon the court in seeking to have their arbitration award confirmed, and (4) their conduct merited sanctions and/or merited a substantial increase in sanctions. The Daltosos seek an award of attorney fees and/or sanctions on appeal.

## II.

### STANDARD OF REVIEW

Whether to grant relief under Idaho Rules of Civil Procedure 60(b) is committed to the discretion of the trial court and will not be disturbed absent an abuse of the court's discretion. I.R.C.P. 24(a)(2) (2004); *W. Cmty. Ins. Co. v. Kickers, Inc.* 137 Idaho 305, 306, 48 P.3d 634, 635 (2002); *Johnston v. Pascoe,* 100 Idaho 414, 420, 599 P.2d 985, 991 (1979); *Bull v. Leake,* 109 Idaho 1044, 1047, 712 P.2d 745, 748 (Ct.App.1986) (involving a Rule 60(b) motion for entry of a judgment obtained by fraud upon the court). In reviewing whether or not a court abused its discretion this Court relies on a three-part test:

> (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason.

*Zimmerman v. Volkswagen of Am., Inc.,* 128 Idaho 851, 857, 920 P.2d 67, 73 (1996).

Where a trial court sits without a jury the Supreme Court liberally construes the trial court's findings of fact in favor of the judgment entered. *Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 699, 874 P.2d 506,

510 (1993)(quoting *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990) (citations omitted)). The Court does not set aside a district court's findings of fact unless they are clearly erroneous. *Mays v. Davis*, 132 Idaho 73, 75, 967 P.2d 275, 277 (1998)(citing I.R.C.P. 52(a)). Even where conflicting evidence exists, the Court will not disturb the trial court's findings and conclusions where based upon substantial evidence. *Id.; see also Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 211–12, 984 P.2d 697, 699–700; *Carney v. Heinson*, 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion; it is more than a scintilla, but less than a preponderance." *Evans v. Hara's, Inc.*, 123 Idaho 473, 478, 849 P.2d 934, 939 (1993) (citation omitted). The Court has free review over a trial court's conclusions of law. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 364, 93 P.3d 685, 695 (2004)(citing *Trimble v. Engelking*, 134 Idaho 195, 196, 998 P.2d 502, 503 (2000)).

## III.

## THE DALTOSOS HAVE STANDING TO BRING A RULE 60(b) MOTION

Campbell and Kildew argue that the language of Idaho Code §§ 7–908, 7–911, 7–912, and 7–913 indicates that arbitration and subsequent confirmation proceedings are only applicable to parties of the arbitration agreement and actual arbitration. Consequently, they argue the Daltosos are a non-party to this case and therefore prohibited from challenging Campbell and Kildew's award. Further, *Hecla Mining Co. v. Bunker Hill Co.*, 101 Idaho 557, 563, 617 P.2d 861, 867 (1980), prohibits a court from inquiring into the motives of parties to an arbitration proceeding because judicial review of arbitration awards is extremely limited. Campbell and Kildew also argue that Idaho Rules of Civil Procedure 60(b)(3) is limited to use by actual parties or at the very least an interested person to the underlying judgment. Relying on *Matter of Estates of Cahoon*, 102 Idaho 542, 549–51, 633 P.2d 607, 614–16 (1981), and *Golder v. Golder*, 110 Idaho 57, 59, 714 P.2d

26, 28 (1986), they assert that this Court has only allowed beneficiaries or named parties to file a motion for relief from a judgment or order. Finally, Campbell and Kildew maintain that the Daltosos lack standing to challenge the arbitration award based on the fact they did not suffer a "distinct palpable injury" as a result of the arbitration or judicial confirmation of the award.

As a preliminary matter, the issue of standing is irrelevant to the district court's decision to set aside the judgment because the district court could *sua sponte* set aside that judgment. Idaho Rules of Civil Procedure 60(b) allows a court to "relieve a party or his legal representative from a final judgment, order or proceeding" for various reasons, including, "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." I.R.C.P. 60(b)(3)(2004). Rule 60(b) further states that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, ... *or to set aside a judgment for fraud upon the court.*" I.R.C.P. 60(b)(6) (2004) (emphasis added); *Compton v. Compton*, 101 Idaho 328, 333, 612 P.2d 1175, 1180 (1980); *Eliopulos v. Idaho State Bank*, 129 Idaho 104, 108–09, 922 P.2d 401, 405–06 (Ct.App.1996).

While it is not critical to the survival of the district court's decision as to the fraud committed on it, the Daltosos do have standing under Rule 60(b) as non-parties directly affected by the court's confirmation of a sham arbitration award. They remain in the case for purposes of an award of sanctions. Idaho's Rule 60(b) is similar to that found in the Federal Rules of Civil Procedure. I.R.C.P. 60(b), *Federal Rules Comparison.* Several federal circuits have held that a non-party has standing to bring a Rule 60(b) motion so long as the non-party was directly affected by the judgment sought to be set aside. *See, e.g., Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir.1994)(court has inherent power to seek relief from judgment obtained by fraud if non-party's interests were affected); *Houck v. Folding Carton Admin.*, 881 F.2d 494, 505 (7th Cir.1989);

*Kem Mfg. Corp. v. Wilder,* 817 F.2d 1517, 1521 (11th Cir.1987); *Southerland v. Irons,* 628 F.2d 978, 980 (6th Cir.1980)(citing *Root Refining Co. v. Universal Oil Products Co.,* 169 F.2d 514, 522–25 (3d Cir.1948) *cert. denied,* 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949)); *see also U.S. v. Buck,* 281 F.3d 1336, 1341–42 (10th Cir.2002). Additionally, the U.S. Supreme Court has held that courts have the inherent power to investigate judgments obtained by fraud and may do so on behalf of all those affected. *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447, 1452 (1946).

In *Wilder,* the Seventh Circuit distinguished between the standing required under F.R.C.P., Rule 60(b)(3) and F.R.C.P., Rule 60(b)(6). According to the court, Rule 60(b)(3) was intended to relieve a "party or his legal representative from a final judgment." *Wilder,* 817 F.2d at 1519–20. A legal representative consists of individuals "in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment." *Id.* at 1520. On the other hand, a motion alleging "fraud upon the court" could be brought by a non-party at any time. *Id.* According to *Wilder:*

> There are cases that allow standing to nonparties … but none of them even suggest that a district court must provide standing to every *nonparty* who makes a Rule 60(b) motion that asserts that there has been a fraud on the court. In no case presented to us has a court provided standing to a nonparty unless that nonparty's rights were directly compromised by the final judgment. *Thus, barring extraordinary circumstances (and we find none here), a nonparty only has standing to raise a challenge of fraud on the court if the nonparty's interests are directly affected by the final judgment.*

*Id.* at 1520–21 (citation omitted)(emphasis added).

The Daltosos were not parties to the arbitration proceeding nor were they legal representatives. Their interests were directly adverse to those of Campbell and Kildew.

Under the logic of *Wilder,* the Daltosos likely do not have standing pursuant to Rule 60(b)(3). However, they do have standing under Rule 60(b)(6) as non-parties directly affected by the district court's confirmation of Campbell and Kildew's arbitration award. The ACC requires both notice and an opportunity for meaningful comment and review prior to the grant of a subdivision permit. If Campbell and Kildew escaped this process via a sham arbitration, then the Daltosos, as well as other neighboring properties, suffered a loss to their procedural rights. The district court properly recognized this loss of rights and found the Daltosos had standing.

Contrary to Campbell and Kildew's assertions, the Daltosos' injury is not a generalized grievance. As neighboring property owners, the Daltosos would suffer a distinct injury as a result of the proposed subdivision's interference with the quiet enjoyment of their property. Furthermore, in *Evans v. Teton County,* 139 Idaho 71, 73 P.3d 84 (2003), this Court found that a neighboring property owner had standing to challenge a Board of Commissioner's approval of a zoning change because the petitioner owned property within 300 feet of a newly planned urban development. *Id.* at 75, 73 P.3d at 89. The Daltosos own property *directly abutting* the Wildhorse properties and thus have standing to challenge both the lack of notice and opportunity for comment on the proposed subdivision. Their injury is not a generalized grievance for purposes of standing.

Campbell and Kildew also argue that the Daltosos do not have standing because they have yet to suffer or quantify an injury as a result of the confirmed arbitration award. They assert that in light of Ada County's determination that the Wildhorse lots are not eligible for building permits, the Daltosos have failed to demonstrate a distinct and palpable injury as a result of the judgment. This argument is erroneous. The Daltosos have suffered an injury in their loss of the right to notice and comment on the proposed subdivision. The traditional subdivision process requires a landowner to go through an approval process with the County involving comments from various key agencies, such as the Fire Department, and notice to neighbor-

ing property owners and the general public. This process results in a thorough review of a proposed subdivision and addresses issues such as hydrological concerns, impact to neighboring properties, and traffic congestion. ACC § 8–6–5(2003). Campbell and Kildew's attempt to subvert this process through a sham arbitration proceeding deprived these agencies and neighboring landowners (including the Daltosos) of the right to protect their own interests. The Daltosos have suffered an actual injury in the loss of their procedural rights.

Although the ACC found the Wildhorse lots were ineligible for building permits, it still found that the confirmed award qualified for the court decree exception and provided Campbell and Kildew with a host of alternatives for legally obtaining building permits for the newly subdivided lots. If Campbell and Kildew are able to obtain permits through any of these methods, the lots will be granted permits without due regard for how the parties managed to subdivide their property and subvert the ACC process. The district court properly held the Daltosos had standing to bring their Rule 60(b) motion.

## IV.

## THE DALTOSOS ARE NOT ESTOPPED FROM CHALLENGING THE DISTRICT COURT'S APRIL 16, 2002 JUDGMENT AND DECREE ON THE BASIS OF THE DOCTRINE OF "UNCLEAN HANDS" OR QUASI–ESTOPPEL

Kildew and Campbell argue that a motion to set aside a judgment is governed by equitable principles. *Assmann v. Fleming,* 159 F.2d 332, 336 (8th Cir.1947); *see also Compton v. Compton,* 101 Idaho 328, 334, 612 P.2d 1175, 1181 (1980). In seeking equitable relief, the Daltosos were required to enter the court with clean hands. *Gilbert v. Nampa Sch. Dist. # 131,* 104 Idaho 137, 145, 657 P.2d 1, 9 (1983). Daltoso previously entered into arbitration with Campbell which resulted in the subdivision of property confirmed by a court decree. According to Campbell, the Daltosos may not now argue against application of the very court exception they formerly relied on to their benefit.

The Daltosos are not estopped based on either the doctrine of unclean hands or quasi-estoppel. The doctrine of unclean hands allows "a court to deny equitable relief to a litigant on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue." *Sword v. Sweet,* 140 Idaho 242, 251, 92 P.3d 492, 501 (2004). Motions to set aside a judgment are governed by equitable principles. *See Compton,* 101 Idaho at 334, 612 P.2d at 1181. The record indicates that Daltoso and Campbell were engaged in a genuine controversy at the time they used the court decree exception to subdivide the Table Ranch property in arbitration. That event has nothing to do with a sham arbitration proceeding to subvert Ada County's zoning ordinance.

Likewise, the Daltosos are not barred by the principle of quasi-estoppel. The doctrine of quasi-estoppel prevents a party from challenging the legality of an action from which he or she has received a benefit while arguing that the action was lawful. *See Alexander v. Trus. of Vill. of Middleton,* 92 Idaho 823, 826, 452 P.2d 50, 53 (1969). The Daltosos have not relied on the legality of the court decree exception in the face of a sham arbitration award. The Daltosos' use of the court decree exception is therefore distinguishable.

Finally, regardless of the unclean hands or quasi-estoppel arguments, the district court could *sua sponte* set aside its judgment.

## V.

## THE DISTRICT COURT'S DECISION THAT CAMPBELL AND KILDEW ENGAGED IN A FRAUD UPON THE COURT IS SUPPORTED BY THE EVIDENCE

### A.  The Application of Rule 60(b)

Idaho's principal case interpreting Rule 60(b) is *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980). *Compton* explained that Rule 60(b) "provides two means of attacking a decree." *Id.* at 333, 612 P.2d at 1180. The first is by a motion for the rea-

sons set out in 60(b)(1) through 60(b)(6). Additionally, Rule 60(b) "preserves three preexisting means of attacking a final judgment" including, the court's inherent power "to entertain an independent action to relieve a party from a judgment" and inherent power to set aside a judgment obtained by fraud upon the court. *Id.* An independent action for equitable relief on the basis of fraud will only be granted in the most unusual of circumstances. *Id.* at 335, 612 P.2d at 1182.

▆▆▆▆ Fraud alleged under Rule 60(b) must be extrinsic rather than intrinsic to the issues being tried. *Id.* at 334, 612 P.2d at 1181. Extrinsic fraud is "where a party is prevented by trick, artifice, or other fraudulent conduct from fairly presenting his claims or defenses or introducing relevant and material evidence." *Id.* (quoting 7 Moore's Federal Practice, P 60.37(1) 612–13 (citations omitted)). It is more than mere interparty misconduct. *Id.* It is a "tampering with administration of justice" which suggests "a wrong against the institutions set up to protect and safeguard the public." *Id.* (quoting *Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250, 1255 (1944)); *Catledge v. Transport Tire Co., Inc.*, 107 Idaho 602, 607, 691 P.2d 1217, 1222 (1984).

▆▆▆▆ There is no express time limit for filing an independent action seeking relief from a judgment other than that the action must be brought within a reasonable time. *Id.* (citing *Gregory v. Hancock*, 81 Idaho 221, 340 P.2d 108 (1959)). The party alleging fraud bears the burden of proof by clear and convincing evidence that the judgment was obtained by fraud. *Tyler v. Keeney*, 128 Idaho 524, 528, 915 P.2d 1382, 1386 (Ct.App. 1996).

### B. The Fraud on the Court

▆▆▆▆ The record indicates Campbell knew of the court decree exception prior to forming Wildhorse. Further, Daltosos' attorney testified Campbell had commented during the Table Rock arbitration that "[i]f this works, you [Daltosos' counsel] and I ought to go into business buying property in the foothills and then get in a fight and divide it through arbitration." Campbell had metes and bounds descriptions made up in November of 2001 which were very similar to those used in March of 2002 for the arbitration award. Additionally, Campbell and Kildew violated the express terms of their Operating Agreement and failed to convey their individual properties to Wildhorse until the day the arbitration award was signed. The property that was conveyed also failed to include the lot sold to the McMillens.

Testimony was also presented that the deal with Sun Mountain did not fall through until after Campbell and Kildew had contacted Hawes to serve as an arbitrator. Further, Campbell and Kildew had already determined prior to meeting with Hawes how they wanted to distribute Wildhorse's property. They both made misrepresentations to Hawes during arbitration, including that the purpose of the arbitration was to dissolve Wildhorse (which was never done) and that they were both represented by counsel. The purported arbitration lasted about half an hour at a cost of $50.00, somewhat less than would be anticipated in a legitimate dispute.

Campbell and Kildew argue that their conduct was in compliance with both the court decree exception of the ACC and Wildhorse's own Operating Agreement. However, use of the court decree exception and Wildhorse's arbitration clause were not intended to further a sham arbitration and/or to defraud the courts and general public. The evidence in the record is sufficient to show the arbitration was a sham and that Campbell and Kildew engaged in the arbitration and a subsequent confirmation proceeding for the sole purpose of circumventing the ACC subdivision process. The district court did not abuse its discretion in finding Campbell and Kildew had engaged in a fraud upon the court and determining that the order confirming the arbitration award should be set aside.

### VI.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ORDERING SANCTIONS

#### A. Standard of Review

▆▆▆▆ The standard of review for an appellate court reviewing a trial court's imposition

of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion. *Slack v. Anderson,* 140 Idaho 38, 39, 89 P.3d 878, 879 (2004)(citing *Chapple v. Madison County Officials,* 132 Idaho 76, 967 P.2d 278 (1998); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991)). In reviewing whether or not a trial court abused its discretion, this Court analyzes:

> (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason.

*Zimmerman v. Volkswagen of Am., Inc.,* 128 Idaho 851, 857, 920 P.2d 67, 73 (1996). The Court has free review over a trial court's conclusions of law. *Shawver v. Huckleberry Estates, L.L.C.,* 140 Idaho 354, 364, 93 P.3d 685, 695 (2004)(citing *Trimble v. Engelking,* 134 Idaho 195, 196, 998 P.2d 502, 503 (2000)).

### B. The Sanctions

▮ Rule 11(a)(1) entails certification that:

> Every pleading, motion, and other paper [filed with the court is] to the best of the signer's knowledge, information, and belief after reasonable inquiry ... *well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is *not interposed for any improper purpose,* such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

I.R.C.P. 11(a)(1)(2004)(emphasis added); *Riggins v. Smith,* 126 Idaho 1017, 1021, 895 P.2d 1210, 1214 (1995). Pursuant to Rule 11(a)(1), "pleadings, motions, and other papers signed by an attorney or a party must meet certain criteria, and failure to meet such criteria will result in the imposition of sanctions." *Slack,* 140 Idaho at 39–40, 89 P.3d at 879–80 (citing *Durrant v. Christensen,* 117 Idaho 70, 74, 785 P.2d 634, 638 (1990)). The intent of the rule is to grant courts the power to impose sanctions for discrete pleading abuses or other types of litigative misconduct. *Kent v. Pence,* 116 Idaho 22, 23, 773 P.2d 290, 291 (Ct.App.1989).

▮ Traditionally, a court's determination of whether to issue sanctions falls on whether an attorney made a proper investigation into the facts and legal theories before signing and filing a document. *See Riggins,* 126 Idaho at 1021, 895 P.2d at 1214. However, Rule 11(a)(1) states that sanctions may be issued for violations of the rule against "the person who signed it, [the pleading, motion or other papers] a represented party, or both." I.R.C.P. 11(a)(1). The rule does not extend to conduct during trial, even where such conduct was unethical. *Id.* at 1022, 895 P.2d at 1214. It is considered "a management tool to be used by the district court to weed out, punish, and deter specific frivolous and other misguided filings" and should be exercised narrowly. *Curzon v. Hansen,* 137 Idaho 420, 422, 49 P.3d 1270, 1273 (Ct.App.2002)(citing *Conley v. Looney,* 117 Idaho 627, 630–31, 790 P.2d 920, 923–24 (Ct. App.1989)); *Sweat v. Hansen,* 116 Idaho 927, 929, 782 P.2d 50, 52 (Ct.App.1989). Reasons for granting attorney fees pursuant to I.C. § 12–121 are not equivalent to and will not support an award of sanctions under Rule 11. *Sun Valley Shopping Ctr.,* 119 Idaho at 96, 803 P.2d at 1002; *Young v. Williams,* 122 Idaho 649, 654, 837 P.2d 324, 329 (Ct.App. 1992).

▮ In issuing sanctions[2] the district court stated it was "well aware that the imposition of sanctions under I.R.C.P. 11(a)(1) and the amount of sanctions is committed to the sound discretion of the court." The court further found that Campbell and Kildew had submitted their petition for the "improper purpose of obtaining a Judgment and Decree confirming the arbitration which would permit the petitioners to circumvent the rights of adjacent property owners and the general public" and that "the only purpose of this sham proceeding was to use courts to circumvent the rights of others." According to the district court, "[i]t is certainly not a proper use of the court system to be a means to maneuver around the rights of

---

**2.** Sanctions were awarded below against Campbell and Daltoso only, not their attorneys. The attorneys who argued below are not the same as those who argued on appeal.

others for private gain. The actions of the parties tampered with the administration of justice and used an institution which is supposed to guard the personal and property rights of others." This finding is reasonable and properly pertains to Rule 11's limited scope of investigation relating to the document filed before the court. The district court did not abuse its discretion in issuing sanctions against Campbell and Kildew.

■ Campbell and Kildew argue that, because the district court found it was without authority to award attorney fees under either I.C. §§ 12–121 or 12–123, the court abused its discretion in issuing sanctions. However, the district court properly noted that this case involved novel issues, including a matter of first impression, namely, whether a non-party had standing to challenge an order confirming an arbitration award under Rule 60(b). Where a case involves a novel legal question, attorney fees should not be granted under I.C. § 12–121. *Graham v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 611, 614, 67 P.3d 90, 93 (2003). Additionally, the court found that I.C. § 12–123 sanctions frivolous conduct designed to harass or maliciously injure another party in a civil case. The Daltosos were non-parties to Campbell and Kildew's arbitration award and thus ineligible for attorney fees under I.C. § 12–123. Although the Daltosos were not entitled to attorney fees under either I.C. §§ 12–121 or 12–123, the district court properly determined Campbell and Kildew's conduct was worthy of sanctions under Rule 11.

Finally, the amount of sanctions was reasonable based upon the parties' conduct and the total expenses paid by the Daltosos in fighting Campbell and Kildew's confirmed arbitration award. Rule 11 sanctions must be sufficient to deter the misuse of the judicial process to defeat the legitimate rights of the public and neighboring landowners. *See generally Curzon*, 137 Idaho at 422, 49 P.3d at 1272. This Court has previously found the amount of attorney fees and computer-aided research costs incurred by the aggrieved party may serve as a guide for determining an amount of sanctions and is not an abuse of discretion under Rule 11. *McKay v. Owens*, 130 Idaho 148, 159, 937 P.2d 1222, 1233 (1997).

In granting the Daltosos' motion to reconsider, the district court found that the propriety to issue sanctions and the amount was committed to its sound discretion. The court further determined that the Daltosos' attorney fees for the evidentiary hearing and Rule 60(b) motion totaled $85,000. Had Campbell and Kildew successfully subdivided their property through a sham arbitration proceeding, they stood to gain substantial financial sums at the expense of the Daltosos' and the public's rights under the ACC. According to the district court, "the sanction must be significant enough to deter the misuse of the judicial process to defeat the legitimate rights of the public and of neighboring landowners." The court's reasoning is in accord with Rule 11(a)(1) and given the Daltosos' expense in bringing the motion, sanctions in the amount of $60,000 were both reasonable and appropriate. The district court did not abuse its discretion in increasing sanctions against Campbell and Kildew to $60,000.

## VII.

### THE DALTOSOS ARE ENTITLED TO SANCTIONS ON APPEAL

■ The Daltosos argue for an award of attorney fees on appeal pursuant to I.A.R. 41(a) and I.C. § 12–121. They assert that Campbell and Kildew have pursued this appeal frivolously and have asked this Court to do no more than second-guess the trial court's well-reasoned decision based on the evidence presented. Additionally, the Daltosos argue Campbell and Kildew's conduct should be sanctioned under I.A.R. 11.1 and I.R.C.P. 11(a)(1). Both parties committed fraud upon the district court and yet frivolously tried to shift the blame for their conduct onto the district court. The Daltosos assert that such conduct merits sanctions. This Court agrees.

■ Where a case involves a novel legal question, attorney fees should not be granted under I.C. § 12–121. *Weaver v. Stafford*, 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000). As noted above, this case involved the novel issue of whether a non-party has standing to

challenge the confirmation of an arbitration award. For this reason an award of attorney fees is not appropriate on appeal. However, sanctions under I.A.R. 11.1 are merited. Idaho Appellate Rule 11.1 is virtually identical to Rule 11(a)(1) of the Idaho Rules of Civil Procedure. Campbell and Kildew appealed a case in which they previously engaged in a fraud upon the court. Despite the novel issue of standing as to the Daltosos, the district court had the inherent power to set aside the confirmed arbitration award. The filing of the appeal on the issues related to the ACC is a continuation of the sanctionable conduct, inviting further sanctions against the parties (not the attorneys) on appeal. Pursuant to I.A.R. 11.1 this Court will impose sanctions.

## VIII.

### CONCLUSION

The Daltosos have standing to bring the Rule 60(b) motion. The district court did not abuse its discretion in finding Campbell and Kildew committed a fraud upon the court and thus it properly set aside its order confirming their arbitration award. The district court did not abuse its discretion in issuing sanctions against Campbell and Kildew in the amount of $60,000. The Daltosos are awarded costs on appeal. Sanctions against Campbell and Kildew (not their attorneys) in an amount to be determined pursuant to I.A.R. 11.1 are allowed on appeal.

Justices TROUT, EISMANN, BURDICK and JONES concur.

