132 P.3d 432

**VFP VC, a Washington limited partnership, and Nick S. Vidalakis, Plaintiffs–Respondents,**

v.

**DAKOTA COMPANY, an Idaho corporation; Larry Durkin, an individual; Fred Meyer Stores, Inc., a Delaware corporation, Defendants,**

and

**LJD Holdings, Inc., Intervenor/Appellant.**

No. 31749.

Supreme Court of Idaho,
Boise, February 2006 Term.

March 21, 2006.

Stoppello & Kiser, Boise, Idaho, for appellant. Frank W. Stoppello argued.

Davison, Copple, Copple & Cox, Boise, Idaho, for respondents. Heather A. Cunningham argued.

JONES, Justice.

## I.

LJD Holdings moved for relief from certain orders it had previously approved, claiming it was no longer equitable to enforce them. The district court denied LJD Holdings' request to vacate the orders. We affirm.

## II.

In September 2002 a jury awarded VFP a substantial monetary award against Larry Durkin because the jury found that Durkin, through his company, Dakota Co., had defrauded VFP. At the time (and until recently) Durkin was the sole shareholder, president, and primary employee of LJD Holdings, which did business as B & D Foods and Dakota Co. Because Dakota Co. filed for bankruptcy before the trial commenced, the central issue at trial was Durkin's personal responsibility for fraud and conversion. The jury found that Dakota Co. was the alter ego of Durkin and the district court awarded personal judgment against him, which was upheld on appeal to this Court. *VFP VC v. Dakota Co.*, 141 Idaho 326, 109 P.3d 714 (2005).

At the time the judgment was entered, VFP moved for the appointment of a receiver for LJD Holdings, dba B & D Foods, because it was concerned that Durkin would attempt to "bankrupt or otherwise destroy the company in order to avoid the judgment as entered." The evidence at trial had demonstrated a regular pattern of financial irregularity in Durkin's use of corporate funds. Further, the evidence showed LJD Holdings was the alter ego of Durkin. At the hearing, the district court explained that it was hesitant to appoint a receiver. Instead, it "directed counsel to devise a method which would preserve the integrity of [LJD Holdings], and its ability to satisfy the debts of Mr. Durkin."

Pursuant to the court's direction, the parties negotiated and entered into a stipulation that placed a number of restrictions and requirements on LJD Holdings. These in-

cluded: joint signatory authority on the accounts; "expenditures would only be made in the 'ordinary, normal course of the business;'" "no additional bank or institutional term debt of any kind was allowed," no increases could be made to the existing lines of credit; and various documents would be provided to VFP to ensure "that corporate funds were not being improperly diverted and that the business was not being denuded of its assets." The stipulation was to remain in force until the judgments were satisfied or until further order of the court. Additionally, the stipulation required approval by LJD Holdings' board of directors, which was created during the negotiations for the stipulation. The board approved the stipulation. In October 2002 the district court entered an Order Regarding Oversight that mirrored the stipulation.

After the first oversight order was entered, there were a number of motions "relating to claims of exemption by Durkin and irregular conveyances by Durkin since the entry of judgment." In January 2003 a Decision on Post-trial Motions was entered and the following month the district court entered a Decision on Claims of Exemption and Fraudulent Conveyances.[1] In March 2003 VFP filed a second motion for the appointment of a receiver, alleging LJD Holdings had failed to comply with the oversight order. As a result, the parties amended their original stipulation to allow VFP to monitor LJD Holdings more closely. LJD Holdings' board of directors approved the amended stipulation and in June 2003 the district court entered an Amended Order Regarding Oversight which mirrored the amended stipulation.

In March 2004, VFP filed a third motion for the appointment of a receiver. The hearing was set for May 12, 2004. However, on May 7, 2004, Hamcol filed an affidavit stating that Durkin was no longer a shareholder, officer, or director of LJD Holdings (Durkin, however, remained the primary employee with operating control). Hamcol explained that it had loaned LJD Holdings $450,000 in the spring of 2002. At the time the loan was

---

1. These decisions are not a part of the record.

made, LJD Holdings entered into a security agreement with Hamcol (dated September 1, 2002), wherein Durkin pledged all of his stock as security for the loan. In early May 2004, Hamcol exercised its rights under the agreement and obtained ownership of Durkin's stock. It then removed Durkin from his positions as director and officer of LJD Holdings. In his response to the third motion for a receiver, Durkin argued that the district court no longer had jurisdiction over LJD Holdings because LJD Holdings was never named as a defendant in the action. LJD Holdings made a similar argument after it was granted leave to intervene in the case.

The district court entered its Decision and Order regarding the motion for receivership on May 28, 2004. In its decision, the district court ruled that it had proper jurisdiction over LJD Holdings and such jurisdiction was not lost just because LJD Holdings changed hands. The district court explained that jurisdiction existed because LJD Holdings was the alter ego of Durkin and was the entity used by Durkin when he entered into the agreements with VFP and because LJD Holdings had actual notice of the impending action. Further, the district court ruled that LJD Holdings was estopped, under the doctrine of quasi-estoppel, from denying jurisdiction because it ratified both stipulations for oversight and because the agreed-upon oversight resulted in extensive supervision and great expenditures by VFP. Additionally, James A. Schoff, the president of Hamcol, was a director of LJD Holdings who had voted to ratify the stipulations of oversight. Therefore, Hamcol was aware and had actual notice of the oversight restrictions. Consequently, the district court held LJD Holdings was bound by its prior agreement (the amended stipulation) and was estopped from denying jurisdiction "at this late date."

The district court denied VFP's motion to appoint a receiver, stating that because LJD Holdings and B & D Foods were the alter ego of Durkin and because Durkin "control[ed] every aspect of the business," appointing a receiver and thereby removing Durkin from controlling the businesses' operations could cause the collapse of those enterprises. The district court then reiterated the restrictions placed in the Amended Order of Oversight.

In November 2004, LJD Holdings moved for relief from the October 2002 and June 2003 oversight orders and the May 2004 Decision and Order (hereinafter "Oversight Orders"). The district court denied this motion, but modified the Amended Order Regarding Oversight to remove the provision prohibiting LJD Holdings from incurring additional debt. The district court explained that permitting LJD Holdings to acquire financing for its operations would benefit all parties by allowing LJD Holdings to remain "viable and productive." On February 18, 2005 the district court entered its Second Amended Order Regarding Oversight. LJD Holdings appeals the district court's decision.

### III.

The Idaho Supreme Court reviews a trial court's order regarding a motion for relief from judgment for an abuse of discretion. *Campbell v. Kildew*, 141 Idaho 640, 645, 115 P.3d 731, 736 (2005) (citations omitted). In determining whether the district court abused its discretion, this Court applies a three-part test: (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason. *Id.* (citation omitted).

When the trial court sits without a jury, its findings of fact are liberally construed in favor of the judgment entered. *Id.* Even if conflicting evidence exists, the findings will not be disturbed unless they are found to be clearly erroneous. *Id.* at 646, 115 P.3d at 737. Therefore, this "Court will not disturb the trial court's findings and conclusions where [they were] based upon substantial evidence." *Id.*

### IV.

LJD Holdings argues that the district court abused its discretion by denying its motion for relief. That is not so. First, it is

uncontroverted that the district court correctly perceived the issue of relief as one of discretion. Second, the district court reached its conclusion through an exercise of reason. The district court considered several factors in making its determination, including the past behavior of LJD Holdings and Durkin, LJD Holdings' less than fastidious compliance with the Oversight Orders, and the effect of the Oversight Orders on the parties. Finally, the district court acted within the bounds of its discretion and consistent with the applicable legal standards.

Idaho R. Civ. P. 60(b)(5) provides for relief from an existing judgment where it is no longer equitable that the judgment have prospective relief. To gain relief under this rule, the movant must show: "(1) that the judgment is prospective in nature; and (2) that it is no longer equitable to enforce the judgment as written." *Rudd v. Rudd,* 105 Idaho 112, 118, 666 P.2d 639, 645 (1983). In the current case, LJD Holdings moved for relief from the Oversight Orders. These Oversight Orders are prospective in nature because they have future application which requires a court's continued supervision.

■ The prospective application of a judgment is no longer equitable if it is no longer just and fair to all concerned. *See Black's Law Dictionary* (8th Ed.2004) ("Equitable" is defined as "Just; conformable to the principles of justice and right."); *Webster's Third New International Dictionary* 769 (1993) ("Equitable" is defined as "fair to all concerned;" "without prejudice, favor, rigor entailing undue hardship."). Under Idaho R. Civ. P. 60(b)(5), a district court may grant relief only if the movant demonstrates a sufficient change of circumstances rendering enforcement of the judgment inequitable. *Rudd v. Rudd,* 105 Idaho at 119, 666 P.2d at 646; *see also Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 760, 116 L.Ed.2d 867, 886 (1992) ("[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance").

When the judgment is based on a consent decree, as is the case here, it is not enough for the movant to simply show that "it is no longer convenient to live with the terms of a consent decree." *Rufo,* 502 U.S. at 383, 112 S.Ct. at 760, 116 L.Ed.2d at 886. Instead, the movant must demonstrate a change in circumstances which makes the decree more onerous or which causes the decree to violate federal or state law. *Id.* at 384–85, 388, 112 S.Ct. at 760–61, 762, 116 L.Ed.2d at 886–87, 888–89. LJD Holdings did not carry this burden.

LJD Holdings claims that relief from the Oversight Orders is warranted because Durkin no longer has an ownership interest in it. While the district court found that this change in circumstance may have warranted a revision to the extent that the Oversight Orders prohibited LJD Holdings from incurring additional debt, this change does not warrant complete relief from the Oversight Orders.

■ LJD Holdings failed to present evidence that the change in ownership made the Oversight Orders more onerous. LJD Holdings argues that the Oversight Orders are costly and time-consuming because they require it to mail various documents to VFP on a weekly basis. While it may be true that complying with these provisions is costly and time-consuming for both parties, the parties have agreed to these provisions since the October 2002 stipulation and there is no evidence that the ownership change increased the cost or time to either party.

Further, LJD Holdings failed to present evidence that the change in ownership caused the Oversight Orders to violate state or federal law. LJD Holdings asserts that the district court abused its discretion because, as applied, the Oversight Orders are inconsistent with the applicable legal standards for wage garnishment. In making this argument, LJD Holdings contends that the Oversight Orders were entered in order to protect Durkin's asset—his stock in LJD Holdings—and that because Durkin no longer owns the stock and is currently only an employee of LJD Holdings, garnishment statutes, rather than the Oversight Orders, should apply. On the contrary, while garnish-

ment statutes could be applied in the current case, the existence of such statutes does not cause the Oversight Orders to be inequitable or in violation of state or federal law.

This case involves a peculiar situation, where the court has jurisdiction over a corporation because the corporation is found to be the alter ego of the sole shareholder, who is also a director, officer, and key employee of the company, and then the corporation changes ownership, but the former shareholder remains the primary employee of the company. As explained by the district court, prior to the stipulations and the Oversight Orders, Durkin and LJD Holdings were virtually indistinguishable. Even after the change in ownership, Durkin remained the "public face" of LJD Holdings and retained control over LJD Holdings as the primary employee in charge of its day-to-day operations. At the hearing, the district court stated that there were many problems with collection of the judgment, including issues surrounding whether LJD Holdings was properly responding to VFP's garnishment of Durkin's wages and whether it was improperly understating Durkin's wages. Based upon this evidence, the district court was justified in holding that the Oversight Orders were appropriate because they allowed the district court to alleviate further problems and to help ensure that Durkin was not, once again, placed in a position to evade the judgment and prevent garnishment. So long as Durkin remained the primary employee of LJD Holdings, it appeared unlikely that simply garnishing Durkin's wages would prevent further problems in the collection of the judgment.

Finally, it is not unjust or inequitable to apply the Oversight Orders. As stated above, the parties stipulated to, and LJD Holdings' board of directors ratified, the Oversight Orders. Mr. Schoff, Hamcol's president, was a member of LJD Holdings' board and voted to approve the stipulations. LJD Holdings argues that Schoff's presence on the board of directors is not relevant in determining whether the Oversight Orders are equitable. This argument is unavailing because Schoff's position as a director demonstrates that Hamcol had actual knowledge of the Oversight Orders and had actual knowledge of all of the restrictions and requirements contained therein prior to Hamcol obtaining ownership of LJD Holdings. Included within both stipulations and the Oversight Orders were provisions which stated that the Oversight Orders "shall remain in full force and effect until further order of this Court or until the existing judgments in this matter entered in favor of [VFP are] satisfied." The Oversight Orders do not provide that their application would end if the ownership of LJD Holdings changed. Both LJD Holdings and Schoff were aware of the possibility that Hamcol could obtain ownership of LJD Holdings, yet both approved the stipulations as they were. Therefore, we do not accept the proposition that Hamcol's acquisition of LJD Holdings causes the Oversight Orders to become inequitable. Consequently, it was not an abuse of discretion for the district court to deny LJD Holdings' motion for relief.

Our decision is not intended to open up a new avenue to be pursued for collection of judgments. In other words, we do not intend to establish an alternative to the execution and garnishment statutes, which are to be used for that purpose. This case presents unusual facts, particularly the fact that the garnishee specifically consented to the Oversight Orders, which facts, together with the deference we accord to the district court decision, have resulted in the disposition we make here.

## V.

■ Idaho R. Civ. P. 60(b)(6) is a residual provision allowing a court to grant relief for any "reason justifying relief from the operation of the judgment." A motion for relief under this section must be made within six (6) months after the judgment was entered. Idaho R. Civ. P. 60(b). VFP argues that Idaho R. Civ. P. 60(b)(6) cannot be applied to the October 2002 and June 2003 Oversight Orders because LJD Holdings filed its motion more than six months after these orders were entered. While VFP is correct in this assertion, Idaho R. Civ. P. 60(b)(6) can still be applied to the district court's May 28, 2004 Decision and Order because it was en-

tered within six months of LJD Holdings' November 24, 2004 motion.

Idaho R. Civ. P. 60(b)(6), however, fails to provide relief to LJD Holdings. The district court found that LJD Holdings' evidence only addressed its argument that applying the judgment was no longer equitable. LJD Holdings failed to provide evidence supporting any other ground for relief. As explained above, the prospective application of the district court's orders is equitable at this time. Therefore, Idaho R. Civ. P. 60(b)(6) does not provide any basis for relief from the Oversight Orders.

### VI.

We affirm the district court's decision and order denying LJD Holdings' request for relief from the Oversight Orders. Costs to VFP.

Chief Justice SCHROEDER and Justices EISMANN and BURDICK and Justice Pro Tem KIDWELL concur.