# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45779

DAVID A. KOSMANN,

    Plaintiff-Appellant,

v.

KEVIN DINIUS, an individual; DINIUS &
ASSOCIATES, PLLC, an Idaho professional
limited liability company,

    Defendants-Respondents.

Boise, January 2019 Term

Opinion filed: May 14, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Gene A. Petty, District Judge.

The judgment of the district court is <u>affirmed in part and reversed in part</u>.

Messerly Law, PLLC, Boise, for Appellant. Loren K. Messerly argued.

Anderson, Julian & Hull, LLP, Boise, for Respondents. Yvonne A. Dunbar argued.

---

MOELLER, Justice.

David Kosmann appeals from a judgment of the district court. He asserts that the district court erred in enforcing an oral settlement agreement reached in mediation between Kosmann, Kevin Dinius, and Dinius & Associates, PLLC (collectively "Dinius"). Kosmann also assigns error to the trial court for (1) awarding attorney fees to Dinius as a sanction against Kosmann and his attorney, (2) declining to impose sanctions against Dinius and his attorney, and (3) striking an untimely memorandum and declaration in support of his motion to reconsider. He further requests that the Court award him attorney fees on appeal. For the reasons stated below, we affirm in part and reverse in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Kosmann retained Dinius to represent him in a dispute with a third party concerning the sale of real property. Following trial, Kosmann was awarded a judgment of approximately

1

$32,000. The opposing party appealed. Kosmann had difficulty paying Dinius's attorney fees, so Dinius withdrew from representation and filed a lien for his attorney fees against the judgment. Kosmann then hired Loren Messerly to replace Dinius as his attorney throughout the appeal. The judgment was ultimately affirmed on appeal. *Kosmann v. Gilbride*, 161 Idaho 363, 386 P.3d 504 (2016). One month later, Kosmann filed a lawsuit against Dinius alleging claims of professional negligence and breach of contract. Dinius was represented by Yvonne Dunbar.

The trial court ordered mediation and appointed a mediator.[1] The mediation occurred on July 26, 2017. After several hours of contentious negotiations, the parties reached a tentative agreement to settle the dispute by having Dinius make a payment of $40,000 to Kosmann.[2] However, before the agreement was final, Messerly met in the hallway with Dunbar and requested an additional term: a release of all potential claims by Dinius against Messerly.[3] Dunbar and Dinius refused, stating that they believed it was unethical for Messerly to make such a request. The request caused a considerable delay in the mediation while the attorneys contacted and spoke with counsel from the Idaho State Bar regarding the ethical concern. Eventually, Messerly dropped his request and instructed Kosmann to inform the mediator that he would accept the original proposed settlement of $40,000 without the release for Messerly.

Kosmann left the room alone and went into the hall to inform the mediator that he was willing to accept the settlement agreement without the release. However, in addition to conveying his decision, Kosmann asked the mediator if he (Kosmann) could meet one-on-one with Dinius. Messerly claims that he was unaware that Kosmann was going to make this request. Without informing Messerly, the mediator communicated Kosmann's wish to Dinius. Dinius initially refused, but claims that after repeated urging from the mediator, he acquiesced and agreed to meet alone with Kosmann. Neither Dinius nor Dunbar were informed that Messerly was unaware of the meeting. During the meeting, Dinius and Kosmann agreed to settle their dispute for approximately $32,000 (the amount held by the court in the property sale dispute between Kosmann and the third party), with the stipulation that Dinius would not pursue litigation against Messerly.

---

[1] The mediator was a sitting district judge from another district.

[2] The Court recites the specifics of the mediation throughout this Opinion in accordance with Idaho Rule of Evidence 507(5)(a)(6), which provides that claims of "professional misconduct … against a mediation party … occurring during a mediation" are an exception to the general rule of privilege applied to mediation communications.

[3] Messerly alleges that Dinius had threatened to sue him for indemnification on a claim relating to the property sale dispute and for interfering with his attorney-client relationship with Kosmann.

When about twenty minutes had passed without Kosmann's return, Messerly went into the hallway to see what was going on. At that time, the mediator informed him that Kosmann and Dinius were having a private discussion. Messerly expressed concern over the meeting because Dinius was an attorney and should not have been speaking to Kosmann without Messerly being present. However, the mediator reportedly advised him that the parties to a mediation are allowed to meet alone, if they wish. Soon thereafter, Kosmann returned and informed Messerly of the new settlement terms. At that point, Messerly advised Kosmann that he could either adhere to the renegotiated settlement agreement and end the litigation or continue to pursue the $40,000 settlement. Kosmann chose to end the litigation.

The parties and their counsel then put the renegotiated settlement agreement on the record. Messerly noted on the record that Kosmann initially agreed to settle the matter for $40,000, but that after the private meeting with Dinius, which Messerly did not consent to, Kosmann agreed to settle for approximately $8,000 less in exchange for the release for Messerly. Messerly further stated that he had advised Kosmann not to request the release and that due to ethical considerations he did not want to be included in it. Nevertheless, despite his protestations, Messerly never objected to the revised terms of the settlement. In fact, when it was Dinius's turn to speak, Messerly intervened to ensure that Dinius mentioned "the other part of the deal" on the record—his agreement not to pursue any claims against Messerly. After it was apparent that an accord had been reached, the mediator asked Dinius's attorney, Dunbar, to "take the lead" in drafting the stipulation and a proposed order of dismissal.

In the weeks following the mediation, Dunbar submitted several drafts of a proposed Mutual Release and Settlement Agreement to Messerly. Messerly disagreed with multiple sections of the agreement and proposed his own language. With the parties at an apparent impasse, Dunbar obtained a transcript of the oral settlement agreement put on the record at the conclusion of mediation to confirm that her draft of the agreement was consistent with the terms of the oral agreement. Messerly rejected Dunbar's suggestion that his client share in the cost of the transcript, authoring several heated emails to Dunbar before ultimately advising her that Kosmann had decided to back out of the settlement agreement. As a result, Dinius filed a motion to enforce the oral settlement on August 2, 2017. The following day, Kosmann filed a cross-motion to enforce the $40,000 settlement that the parties agreed to before Dinius met with Kosmann. The district court held a hearing on both motions on August 31, 2017.

3

Shortly after the hearing—and without leave from the court—Kosmann filed a supplemental brief in support of his motion to enforce the settlement agreement. The following week, Dinius filed a motion to strike Kosmann's supplemental brief on the basis that it was untimely and filed without leave. Two days after Dinius filed his motion to strike, Kosmann filed a corrective Motion for Leave to File Supplemental Material. The district court granted Kosmann's motion and took the supplemental brief under advisement. On November 3, 2017, the district court issued a memorandum decision in which it enforced the oral settlement agreement that was put on the record at mediation.

Meanwhile, the parties had filed cross-motions for sanctions. Kosmann argued that Dinius violated Idaho Rule of Professional Conduct 4.2 by meeting with him alone and that the district court should use its inherent authority to impose sanctions against Dinius for that ethical violation. He also argued that Dinius violated Idaho Rule of Civil Procedure 11(b) by filing (and not withdrawing) the motion to enforce the oral settlement agreement that he believed resulted from Dinius's alleged breach of Rule 4.2. Dinius also argued for sanctions against Kosmann pursuant to I.R.C.P. 11(c) on the basis that Kosmann's motions to enforce the settlement and for sanctions were frivolous and unwarranted by existing law or fact. He also requested payment for one hour of billable time as a sanction against Kosmann and Messerly on the basis that he was forced to file a motion to strike Kosmann's untimely supplemental brief.

The district court denied Kosmann's motion for sanctions on the bases that Dinius's motion to enforce the settlement did not violate I.R.C.P. 11 and that even if Dinius violated Rule 4.2, the Idaho Rules of Professional Conduct do not provide a legal basis for a trial court to impose sanctions for alleged ethical violations. It partially denied Dinius's motion for sanctions to the extent that it found that Kosmann's arguments were not frivolous or unwarranted, but granted the motion in regard to payment for the one hour of billable time Dunbar spent on the motion to strike Kosmann's untimely supplemental brief. The district court's stated reason for granting that sanction was that the brief was not warranted under existing law. It then issued a final judgment in the case.

On December 5, 2017, Kosmann filed a motion to reconsider the court's decisions regarding enforcement of the settlement agreement and the imposition of sanctions. However, he failed to file his memorandum and declaration of counsel in support of the motion within the

4

timeline prescribed by I.R.C.P. 11.2(b). Consequently, Dinius filed a motion to strike Kosmann's untimely filings. On January 24, 2018, the district court issued its Memorandum Decision and Order on Plaintiff's Motion to Reconsider and Defendants' Second Motion to Strike in which it struck Kosmann's untimely filings and denied Kosmann's motion to reconsider in its entirety. Kosmann timely appealed.

## II.     STANDARD OF REVIEW

"This Court has frequently stated that '[a] motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted.' " *Seward v. Musick Auction, LLC*, 164 Idaho 149, 155, 426 P.3d 1249, 1255 (2018) (quoting *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 845–46, 419 P.3d 1139, 1143–44 (2018)). "Such a motion seeks specific performance of the settlement agreement or a declaration of the rights of the parties. As these claims for relief lie in equity, there is no right to jury trial." *Id.* at 156, 426 P.3d at 1256. Accordingly,

> the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (internal quotation omitted). Thus, the Court applies the summary judgment standard "when reviewing the district court's order enforcing the settlement agreement." *Seward*, 164 Idaho at 156, 426 P.3d at 1256.

"The standard of review for an appellate court reviewing a trial court's imposition of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion." *Campbell v. Kildew*, 141 Idaho 640, 649–50, 115 P.3d 731, 740–41 (2005). The abuse of discretion standard also applies when we review a district court's decision to reject an untimely filing. *See Marek v. Hecla, Ltd.*, 161 Idaho 211, 221, 384 P.3d 975, 985 (2016).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

5

## III.    ANALYSIS

**A.  The district court did not err in enforcing the $32,047.19 settlement agreement.**

The district court thoroughly reviewed the facts and the applicable law, and concluded that the settlement agreement was an enforceable contract:

> [A]fter discussing the status of the case and the proposed agreement with his attorney, Kosmann exercised his ultimate authority as a client to settle these matters. Idaho R. Prof. Conduct 1.2(a) and comment 1. Kosmann and his attorney knew what had occurred in the meeting between Kosmann and Dinius prior to agreeing to the settlement on the record. They had an opportunity to disaffirm the agreement reached by Kosmann and Dinius and/or to end the mediation without reaching a settlement. Yet Kosmann chose not to walk away, and instead agreed to the settlement he had reached with Dinius. The Court has already found that the settlement agreement as entered on the record is a valid and enforceable contract. The facts and circumstances surrounding the meeting between Kosmann and Dinius and subsequent opportunity for Kosmann to discuss that meeting with his attorney do not render the settlement agreement void for violation of public policy, and the Court finds no basis to upset the settlement agreement under these facts.

Kosmann argues that the district court erred in applying contract law principles to determine whether the settlement agreement was enforceable, in deciding that he voluntarily agreed to the $32,047.19 settlement, and in declining to decide whether a violation of Rule 4.2 rendered the agreement unenforceable. We address Kosmann's arguments in turn.

1.  <u>The district court did not err in applying contract law principles to determine whether the settlement agreement was enforceable.</u>

Kosmann argues that the district court erred in applying contract law principles to determine whether the settlement agreement was enforceable and that the contract issues in the case "should be moot" because the district court should have applied ethical principles instead.

In addressing whether an oral settlement agreement is enforceable as a contract, we recently stated:

> A settlement agreement stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally. A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty. . . . [F]ormation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract. Oral agreements for settlement are generally enforceable as contracts . . . . especially when acted upon or entered on the court records.

6

*Seward*, 164 Idaho at 158-59, 426 P.3d at 1258–59 (internal citations and quotations omitted). Notwithstanding our misgivings over the ethical issues associated with this case, the heart of this dispute is an oral contract. Kosmann has cited no authority for his position that the law of contracts must be entirely abandoned when ethical concerns are raised. Accordingly, the district court correctly applied contract law principles in determining whether the oral settlement agreement entered on the court record was enforceable.

2. The district court did not err in holding that the settlement agreement was enforceable.

Kosmann next argues that the district court erred in holding that the settlement agreement was enforceable because he did not voluntarily agree to it and because the alleged violation of Rule 4.2 rendered it void. The district court found that Messerly had fully advised Kosmann of his option to return to the original agreement and concluded that Kosmann knowingly ratified the settlement agreement and waived any potential objections based on the alleged ethical violation by voluntarily assenting to the settlement agreement on the record.

"A motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted." *Estate of Holland v. Metro. Prop. & Cas. Ins. Co.*, 153 Idaho 94, 100, 279 P.3d 80, 86 (2012). Thus, the "Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record." *Borley*, 149 Idaho at 177, 233 P.3d at 108.

All contracts "must be complete, definite and certain in all [their] material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Seward*, 164 Idaho at 158, 426 P.3d at 1258–59. Here, the district court found that the terms of the agreement were definite and "the parties agreed to the essential terms of the settlement agreement on the record . . . . Both the clients and counsel for each side made clarifying remarks. Neither client repudiated the agreement or sought to modify the material terms." Kosmann does not challenge the district court's findings in that regard, but argues that his agreement to the terms was not voluntary.

"The best evidence to support the parties' intent to contract is to look at the words of counsel and their clients." *Id.* at 159, 426 P.3d at 1259. In its decision to enforce the settlement agreement, the district court considered the relevant documents, including an affidavit that

7

Messerly submitted describing a conversation he had with Kosmann before Kosmann agreed to the settlement on the record. In the affidavit, Messerly asserts, in pertinent part:

> I . . . told Kosmann that he had two options: 1) we would fight to get the $40,000 settlement and enforce it, through more mediation that day or likely through a motion practice, with the unfortunate belief that [the mediator] would do whatever he could to support the other side; or 2) he could take the $32,000 and be done but I would put on the record that I had not asked for Dinius' verbal release and also the other highly irregular things that had happened during the mediation. . . . Kosmann wanted to be done and did not want to have to litigate for many more weeks to try and get back his $40,000 settlement. So he chose the 2nd option.

The district court also considered Kosmann's statements on the record at the conclusion of mediation, in which he explained his decision to settle:

> I'll express the same things I expressed with [Dinius]. It is my hope to be done today. And I want to move forward with my life. I feel comfortable with the agreement that I made with [Dinius] just from man to man, besides all the legal stuff. Would I prefer having more money? Yes. But I also want my peace of mind. And I want to continue with my lawyer, [Messerly], to go on to the litigation that I have ahead of me. And I want bygones to be bygones between [Dinius] and I so that we can end on good terms and we can – we can both move on with our lives. . . . I'm doing this for my own accord because today is the day to move forward.

Kosmann's statements not only establish that he was comfortable with the terms of the agreement, but also support the district court's conclusion that he entered into the agreement knowingly and willingly.

On reconsideration, Kosmann asserted that he was coerced into abiding by the agreement with threats of litigation and sanctions from the mediator, Dinius, and Dunbar.[4] The district court considered all relevant documents that were timely filed and determined that "[a] client has the ultimate authority to decide whether to settle his case, and Mr. Kosmann exercised that authority." After reviewing the relevant evidence, the district court again concluded in its decision on reconsideration that:

---

[4] Notwithstanding the party's allegations that the mediator not only permitted, but repeatedly urged Dinius to meet privately with Kosmann without confirming Messerly's consent, the Court rejects the notion from both sides that they were "ordered" to participate in these acts because the mediator was a sitting judge. Although the mediator is a district judge, he was not the presiding judge on this case and he had no actual or apparent authority to order the attorneys or their clients to do anything. Additionally, although we are mindful that both parties have accused the mediator of using coercive tactics during the mediation, we recognize that the mediator is not a party to this case and did not have an opportunity to address these allegations.

Mr. Kosmann had the opportunity to confer with his attorney after the meeting with Mr. Dinius and prior to agreeing to the settlement on the record. Mr. Kosmann and Mr. Messerly discussed Mr. Kosmann's options regarding the settlement, and his attorney provided him with advice on those options. The Court found all of this was sufficient to overcome any potential overreaching or influence exerted by Mr. Dinius in the parties' one-on-one meeting. Mr. Kosmann decided to settle after he had consulted and received the counsel of his attorney and was advised as to his options. Mr. Kosmann is bound by his decision.

As a result, it again found that "Kosmann knowingly and willingly entered into the settlement agreement after consulting with his attorney."

Although Kosmann contends that the mediator, Dinius, and Dunbar pressured him into accepting the renegotiated settlement agreement, the record demonstrates that Kosmann had access to Messerly's counsel throughout mediation. The evidence supports the district court's finding that after Kosmann's meeting with Dinius, Messerly instructed him regarding his options and told him that he did not have to accept the renegotiated agreement. As Kosmann himself stated, he chose to do so because he wanted "to move forward" with his life.

As we have said, "a party may not avoid the duties imposed under the terms of a valid and enforceable contract simply because that party subsequently decides that additional terms may be desirable." *Seward*, 164 Idaho at 159-60, 426 P.3d at 1259–60. Likewise, a party may not avoid a contract simply because that party subsequently decides that *different* terms are desirable—*i.e.*, a $40,000 payment without a release rather than a $32,047.19 payment with a release. The record clearly demonstrates that Kosmann voluntarily agreed to the settlement agreement at the conclusion of mediation. Furthermore, Kosmann initiated the contact with Dinius himself, thereby creating the very problem he now cites as a basis for undoing the settlement.[5] As a result, notwithstanding the discomfort we have with the manner in which the settlement agreement was consummated, we hold that the district court properly determined that the oral settlement agreement was enforceable.

3. We decline to decide whether Dinius violated Rule 4.2.

The remaining question, then, is whether the alleged ethical violations have so tainted the agreement to render it void. Whether an ethical violation in the negotiation process renders an agreement void is an issue of first impression in Idaho. However, we decline to decide that issue

---

[5] Although the fact that Kosmann initiated the contact with Dinius may be relevant for determining whether Kosmann consented to the settlement agreement, it does not immunize Dinius from claims he violated his ethical duties under Rule 4.2. *See* I.R.C.P. 4.2, comment 3 ("The Rule applies even though the represented person initiates or consents to the communication.")

here. Even if a contract could be deemed void or violative of public policy for that reason, there are no findings in the record as to whether Dinius (or any of the attorneys) actually violated the Idaho Rules of Professional Conduct because the trial court properly left that determination to the State Bar. Kosmann argues that *Runsvold v. Idaho State Bar*, 129 Idaho 419, 925 P.2d 1118 (1996), which holds that an attorney acting *pro se* in a matter is bound by Rule 4.2, applies to Dinius's conduct during mediation even though Dinius was represented by counsel. The district court found that whether *Runsvold* applies is an issue of first impression, and again left to the Idaho State Bar the responsibility to make the initial factual determinations necessary to ascertain whether Dinius violated Rule 4.2. We must defer as well, inasmuch as there are no factual findings upon which this court can determine the issue on appeal. However, as will be discussed further below, this question may be answered in the future, if it is presented to us in the proper context.

Additionally, while Messerly is quick to point out that Dinius's behavior constituted a potential ethical violation under Rule 4.2, he completely ignores his own substantial contributions to this case's descent into an ethical quagmire. Specifically, the Court is mindful of the allegations that Messerly initially refused to accept the $40,000 settlement without securing a personal release from Dinius. If proven, such conduct also raises the specter of additional ethical violations under Rules 1.2(a) and 1.7(a)(2).[6] Therefore, given the breadth of the problematic behavior alleged in this case, we properly leave the initial factual determinations as to whether ethical violations occurred to the Idaho State Bar. *See* I.C. § 3-412.

## B. The district court did not err in declining to impose sanctions against Dinius for the alleged violation of Rule 4.2.

Kosmann argues that the district court abused its discretion in declining to sanction Dinius for an alleged violation of Rule 4.2 and in declining to sanction Dinius and Dunbar for allegedly abusing I.R.C.P. 11. The district court found that it did not have authority to impose

---

[6] Rule 1.2(a) states that "[a] lawyer shall abide by a client's decision whether to settle a matter," while Rule 1.7(a)(2) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." In demanding a personal release for himself as a condition of settlement, Messerly may have created a conflict of interest between himself and his client. Further, had Messerly not requested this personal release—which he acknowledges would be of no benefit to his client—it is likely that the entire Rule 4.2 issue would not have arisen. In fact, even if we fully accept Messerly's view of the facts, it is highly probable from an objective view of the record that Kosmann—a man Messerly describes as susceptible to pressure—would not have made the decision to privately meet with Dinius and seek a release for Messerly, had he not been prompted to do so by his attorney's actions.

sanctions for an ethical violation. It did not address whether to impose sanctions against Dinius and Dunbar for abusing I.R.C.P. 11 because that issue was not raised before it.

"The standard of review for an appellate court reviewing a trial court's imposition of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion." *Campbell v. Kildew*, 141 Idaho 640, 649–50, 115 P.3d 731, 740–41 (2005).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Kosmann did not preserve the issue of whether the district court abused its discretion in declining to sanction Dinius and Dunbar for abusing I.R.C.P. 11. While Kosmann alleged before the district court that Dinius and Dunbar's repeated requests for sanctions were in "clear retaliation" for Kosmann challenging Dinius's actions, merely asserting that their conduct was retaliatory was not sufficient. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." I.R.C.P. 11(c)(2). Kosmann did not move for sanctions on the basis that Dinius and Dunbar abused I.R.C.P. 11, and the district court did not address the issue *sua sponte*. As a result, this issue was not preserved for appeal, and therefore, we will not address it. *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799, 589 P.2d 540, 546 (1979) ("[I]ssues not raised below will not be considered by this court on appeal.").

Regarding the alleged violation of Rule 4.2, the district court concluded that "a potential violation of Rule 4.2, where I.R.C.P. 11 had not been violated, did not warrant invoking the Court's inherent authority to impose sanctions." The court further stated that ethical violations "should be raised with the Idaho State Bar." The district court did not abuse its discretion in declining to impose sanctions for the alleged ethical violation.

Idaho Code section 3-408 provides that the board of commissioners of the Idaho State Bar (board) "shall formulate rules governing the conduct of all persons admitted to practice and shall investigate and pass upon all complaints that may be made concerning the professional conduct of any person admitted to the practice of the law." *See also* I.C. § 3-412 ("The board of commissioners shall establish rules, subject to the approval of the Supreme Court, governing

11

procedure in cases and investigations involving alleged misconduct of members of the Idaho State Bar, and to make and create committees for the purpose of investigating complaints and charges, which committees may be empowered to recommend to the board discipline . . . ."). Accordingly, the board promulgated the Idaho Bar Commission Rules, which established the "requirements, qualifications and procedures for . . . maintenance of membership in the Idaho State Bar." I.B.C.R. 101. With those rules, the board has designed a comprehensive scheme for submitting complaints alleging ethical violations, investigating those complaints, imposing sanctions where warranted, and for appealing an adverse decision to the Idaho Supreme Court. *See* I.B.C.R. 500, *et seq*. Thus, the district court appropriately recognized that whether to issue sanctions for an ethical violation is a decision for the Idaho State Bar.

Kosmann argues that a district court should be able to impose sanctions for a violation of an ethical rule; otherwise, there will be no recourse for an injured party. He is incorrect. To reiterate, "[t]he Rules [of Professional Conduct] are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." I.R.P.C., Scope, 20. This is so because "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* Simply put, the ethical rules that govern our profession are a shield designed to protect litigants from unscrupulous attorney behavior, not a cudgel with which the opposing attorneys can bash each other to gain a tactical advantage in litigation.

Further, while harm to another is not a prerequisite for the Court to sanction an attorney for unethical conduct, *Runsvold v. Idaho State Bar*, 129 Idaho 419, 421–22, 925 P.2d 1118, 1120–21 (1996), the Court considers harm to others as an aggravating circumstance when issuing sanctions. *Idaho State Bar v. Souza*, 142 Idaho 502, 506, 129 P.3d 1251, 1255 (2006). Indeed, the Idaho Bar Commission Rules specifically provide for restitution in situations where a client is financially injured by an attorney's unethical conduct. "Restitution may be imposed as a condition of any probation or in conjunction with any Sanction." I.B.C.R. 506. Accordingly, if any of the attorneys in this case committed an ethical violation that caused financial injury to Kosmann, it is within the Idaho State Bar's power to order restitution for such injury.

In sum, we decline to address Kosmann's argument that Dinius and Dunbar should be sanctioned for abusing I.R.C.P. 11 and hold that the district court did not abuse its discretion in

12

declining to sanction Dinius for the alleged violation of Rule 4.2. Likewise, we leave to the Bar responsibility for reviewing the ethical performance of the attorneys in this case.

## C. The district court abused its discretion in imposing I.R.C.P. 11 sanctions against Kosmann and Messerly.

Kosmann argues that I.R.C.P. 11 does not support the district court's $200 sanction of him and Messerly, and that imposing the sanction was an error of law because Dinius did not comply with the safe-harbor provision of I.R.C.P. 11(c)(2) in requesting the sanction. The district court determined that an untimely supplemental brief filed by Kosmann warranted sanctions against him and Messerly under I.R.C.P. 11(b)(2).

"The standard of review for an appellate court reviewing a trial court's imposition of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion." *Kildew*, 141 Idaho at 649–50, 115 P.3d at 740–41.

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

In imposing sanctions against Kosmann and Messerly, the district court "found that [Kosmann] violated I.R.C.P. 11(b) by filing a brief not warranted by existing law (specifically the rules governing filing deadlines set forth in I.R.C.P. 7(b)(3) and 2.2(b)(1)(B))." The district court did not properly apply the applicable legal standard from I.R.C.P. 11 in imposing this sanction. The relevant portion of I.R.C.P. 11 provides as follows:

> By presenting to the court a pleading, written motion, or other paper, whether by signing, filing, or submitting, or later advocating it, an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> . . . .

I.R.C.P. 11(b)(2). The language of the rule indicates that it applies where the contents of a document—*i.e.*, "the claims, defenses, and other legal contentions"—are not warranted by

existing law, not where the document was merely filed outside of a deadline prescribed by another procedural rule. *Id.* Thus, the district court did not act consistently with the applicable legal standard for imposing sanctions pursuant to I.R.C.P. 11(b). *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. As a result, the district court abused its discretion, and the sanction must be returned to Kosmann and Messerly.

Because we reverse the district court's decision to impose sanctions against Kosmann and Messerly on the basis that I.R.C.P. 11 does not support the sanction, we need not address whether the district court erred in imposing sanctions in violation of the safe-harbor provision of I.R.C.P. 11(c)(2).

## D. We decline to address Kosmann's argument that the district court abused its discretion in striking Kosmann's untimely memorandum and declaration in support of his motion to reconsider.

Kosmann argues that the district court abused its discretion in striking his memorandum and declaration of counsel in support of his motion to reconsider. The district court found that it was appropriate to strike the pleadings because they were untimely and Kosmann did not file a motion for leave.

Kosmann admits that "Messerly initially conceded the issue of the memorandum and declaration being untimely," but asserts that "upon further review, the case law appears unclear." Kosmann's argument is similar to that made by the State in *State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017). There, we noted that:

> [T]he State maintains on appeal, even though it conceded the point below, that the Court must decide whether the interaction between Cohagan and Officer Curtis was lawful. This is incorrect. . . . "[I]ssues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court."

*Cohagan*, 162 Idaho at 721, 404 P.3d at 663 (quoting *Heckman Ranches, Inc.*, 99 Idaho at 799–800, 589 P.2d at 546–47). Kosmann conceded before the district court that the memorandum and declaration were untimely. Thus, to the extent that Kosmann now asserts on appeal that he may have timely filed the documents, we will not address his argument.

Kosmann further argues that the district court should have considered the documents even if they were untimely and that failing to do so "promote[d] a procedural technicality over substantive legal issues, contrary to law." However, he also states that "[i]t is not clear if the Court's ruling to strike the Memorandum and Declaration actually had any substantive impact."

14

"Idaho courts are to 'disregard all errors and defects that do not affect any party's substantial rights.'" *Matter of Doe*, 163 Idaho 565, 571, 416 P.3d 937, 943 (2018) (quoting I.R.C.P. 61). "Consequently, because an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated." *Id.* (quoting *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012)). Kosmann has not presented any argument that the district court's refusal to consider the untimely memorandum and declaration implicated a substantial right. As a result, we decline to address Kosmann's argument that the district court abused its discretion in striking the untimely memorandum and declaration in support of his motion to reconsider.

### E. Kosmann is not entitled to attorney fees on appeal.

Kosmann argues that he is entitled to attorney fees on appeal pursuant to a draft of the settlement agreement, under Idaho Code section 12-121, and as a sanction against Dinius for an alleged violation of Rule 4.2. However, Kosmann is not entitled to attorney fees on appeal under any of his proffered theories.

First, we address the written settlement agreement drafted by Dunbar. The written agreement contained a provision stating that "[t]he prevailing Settling Party in any litigation or other enforcement action concerning, relating to, or arising out of this Agreement shall be awarded its reasonable attorney's fees and costs incurred in connection with such litigation or enforcement."[7] However, both parties acknowledge that the draft agreement was never signed. Indeed, Kosmann's refusal to sign any of the four versions of the written agreement spurred this litigation. Thus, notwithstanding our decision to enforce the oral settlement agreement, the written settlement agreement was never a binding contract and Kosmann cannot recover attorney fees under its attorney-fee provision.

Next, Idaho Code section 12-121 allows a prevailing party to recover attorney fees where "the case was brought, pursued or defended frivolously, unreasonably or without foundation." Because Kosmann did not prevail on the gravamen of his appeal—setting aside the oral settlement agreement and enforcing the earlier $40,000 settlement—he is clearly not the prevailing party and is, therefore, not entitled to attorney fees under Idaho Code section 12-121.

---

[7] This provision of the unsigned agreement was not discussed as part of the oral settlement placed on the record at the conclusion of the mediation.

Finally, Kosmann requests attorney fees as a sanction for Dinius's alleged violation of Rule 4.2. As we previously noted, the Idaho State Bar has implemented a thorough process for determining whether an ethical violation occurred and what sanctions are appropriate for a given violation. *See* I.B.C.R. 500, *et seq.* Accordingly, we decline to circumvent that process and impose a sanction in the form of attorney fees against any of the attorneys in this case.

## IV.    CONCLUSION

The record in this case is so tarnished with questionable conduct that it has presented this Court with a vexing ethical and legal dilemma. While we are gravely concerned over the potential ethical lapses which allegedly occurred during the mediation of this matter, there are no findings in the record concerning these matters. Therefore, as the trial court determined, we will leave to the Idaho State Bar, if properly called upon, the responsibility to investigate this matter further and make the necessary findings and conclusions as to the ethical issues presented.

However, as to the contract issues appropriately before us, we affirm the district court's decisions enforcing the oral settlement agreement and declining to impose sanctions against Dinius for the alleged violation of Rule 4.2. We reverse the district court's imposition of sanctions against Kosmann and Messerly and order Dinius and Dunbar to return the $200 sanction in a timely manner. Because both sides partially prevailed, we do not award attorney fees or costs on appeal to either party.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**