880 P.2d 245

Greg H. BOWER, Ada County Prosecuting Attorney, Plaintiff–Appellant–Cross Respondent,

v.

Honorable Thomas R. MORDEN, Magistrate Judge, Defendant–Respondent–Cross Appellant.

No. 21082.

Supreme Court of Idaho, Boise, May 1994 Term.

Aug. 29, 1994.

Greg H. Bower, Ada County Pros. Atty., and Cary B. Colaianni, Deputy Ada County Pros. Atty., Boise, for appellant. Cary B. Colaianni argued.

Larry EchoHawk, Atty. Gen., David G. High, Deputy Atty. Gen., and Steven F. Scanlin, Deputy Atty. Gen., Boise, for respondent. Steven F. Scanlin argued.

McDEVITT, Chief Justice.

In this case we are asked to decide if the right to judicial disqualification without cause under I.C.R. 25(a) may be limited due to the number of cases in which a party exercises the right against an individual judge. We hold that it may not, and that in this case the writs of prohibition and mandate are available as remedies to enforce the right.

Plaintiff – Appellant – Cross – Respondent, Greg H. Bower, Ada County Prosecuting Attorney (Bower), appeals from a district court ruling denying his request for a writ of mandate and writ of prohibition to prevent Defendant–Respondent–Cross–Appellant, the Honorable Thomas R. Morden, Magistrate Judge (Judge Morden), from denying Bower's motions to disqualify Judge Morden. Bower also appeals from the declaratory judgment ruling of the district court which declared the prospective rights of the parties. Judge Morden cross-appeals from the declaratory judgment ruling.

## I

## BACKGROUND AND PRIOR PROCEEDINGS

During the summer of 1993, deputy prosecuting attorneys employed by Bower expressed their dissatisfaction with Judge Morden to Bower, based on their perception that Judge Morden was biased against the office of the prosecutor. In August of 1993, Bower instituted a policy of having his deputies file motions for automatic disqualification of Judge Morden pursuant to I.C.R. 25(a) in all criminal cases. Judge Morden initially granted such motions, but ultimately began issuing identical blanket denials of Bower's motions in all cases. In each case, Judge Morden stated that the motion was denied because, pursuant to I.C.R. 25(a), it had been brought for the purpose of "hindering, delaying, or obstructing the administration of justice."

Bower sought a writ of mandate and writ of prohibition against Judge Morden. After preliminary proceedings,[1] a trial was held on Bower's request for the writs.

---

1. Initially, Judge Schroeder granted an alternative writ of mandate requiring Judge Morden to vacate his earlier orders and a writ of prohibition restraining him from denying future motions and set the matter for a show cause hearing. Judge Morden then moved to disqualify Judge Schroe-

At trial, several of Bower's deputies testified that they believed Judge Morden was biased. The Ada County Public Defender and a private attorney both testified that they thought Judge Morden had a professional demeanor and delivered consistent rulings. Other evidence at trial established that Judge Morden had denied well over one hundred disqualification motions since Bower initiated his policy and that Bower had not sought an appeal from any of these rulings. Additionally, Bower had not sought a writ of prohibition or writ of mandate with reference to a refusal to grant a disqualification motion in any particular pending criminal case. Although there was evidence of some administrative delay caused by the number of motions and the attendant reassignments during those periods when the motions had been granted (before Judge Morden began denying the motions), there was no evidence which established that any individual disqualification motion caused, or would cause, delay disproportionate to that normally associated with reassignment of an individual case after a disqualification motion.

The district court denied the request for the writs, concluding that Bower's blanket motions were designed to hinder, delay or obstruct the administration of justice because they were designed to influence Judge Morden's rulings. The district court also held that Bower was not entitled to relief in the form of a writ of mandate or writ of prohibition, both because he had failed to exhaust his remedies at law and because the writs were not appropriate to constrain a discretionary function such as deciding whether or not a disqualification motion was brought to hinder, delay or obstruct the administration of justice.

The district court further concluded that Judge Morden had abused his discretion by responding to the blanket motions with a blanket denial instead of considering each case independently. The district court entered declaratory judgment allowing Bower only to file motions to disqualify Judge Mor-

den in future "selected cases for perceived bias."

## II

## ANALYSIS

### A. The Writs Of Mandate And Prohibition Are Appropriate Remedies Because Ruling On A Motion For Automatic Disqualification Does Not Involve A Discretionary Decision And Bower Had No Adequate Remedy Available At Law.

Idaho Criminal Rule 25(a) provides, in relevant part, as follows:

(a) Disqualification of judge without cause. In all criminal actions, the parties shall each have the right to one disqualification without cause of the judge or magistrate, except as herein provided, under the following conditions and procedures:

(1) Motion to disqualify. In any criminal action in the district court or the magistrate's division thereof, any party may disqualify one (1) judge or magistrate by filing a motion for disqualification without cause, which shall not require the stating of any grounds therefor, and the granting of such motion for disqualification without cause, if timely, shall be granted. Each party in a felony prosecution shall have one (1) disqualification without cause under this Rule as to the magistrate appointed to hear the preliminary hearing and another disqualification without cause as to the district judge appointed to hear the trial of the action. A motion for disqualification without cause shall not be made under this Rule to hinder, delay or obstruct the administration of justice.

(2) Time for filing. A motion for disqualification without cause must be filed not later than seven (7) days after service of a written notice setting the action for status conference, pre-trial conference, trial or for hearing on the first contested

der and, after several recusals, the case was ultimately assigned to Judge Fuller by this Court. Judge Fuller modified the alternative writ so that Judge Morden was obligated to grant the motions when brought in court trials and preliminary hearings, but allowing denial in jury trials. However, because the appeal and cross-appeal in this case are both from the final ruling of the district court, these earlier rulings are not at issue in this appeal.

motion, or not later than fourteen (14) days after service of a written notice specifying who the presiding judge or magistrate to the action will be, whichever occurs first; and such motion must be filed before the commencement of a status conference, a pre-trial conference, a contested proceeding or trial in the action.

Prior to its amendment in 1982, the rule did not contain the language that prohibits filing a motion to "hinder, delay or obstruct the administration of justice." That language was adopted from the corollary civil rule, I.R.C.P. 40(d)(1). This Court has never before been called upon to decide, under either the civil or criminal rule, whether a writ of prohibition or writ of mandate may issue against a judge who denies a motion for disqualification as being one brought to "hinder, delay or obstruct the administration of justice."

The statutory authority for a writ of mandate, I.C. § 7–302, provides:

It may be issued by any court except a justice's or probate court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and the enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

The writ is only available in limited circumstances:

The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested.

I.C. § 7–303. The writ of prohibition is substantially similar both in scope and limitation:

It may be issued by any court except probate or justice's courts, to an inferior tribunal, or to a corporation, board or person in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon

affidavit on the application of the person beneficially interested.

I.C. § 7–402.

The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

I.C. § 7–401.

This Court has consistently held that "writs of mandate (and their counterpart, prohibition) will not issue to compel the performance of a purely discretionary function." *Bopp v. City of Sandpoint*, 110 Idaho 488, 490, 716 P.2d 1260, 1262 (1986) (citations omitted).

This Court has previously approved the use of writs against judges refusing to disqualify when the refusal to disqualify was not predicated on a discretionary decision. In *Hultner–Wallner v. Featherstone*, 48 Idaho 507, 283 P. 42 (1929), this Court said that a writ of prohibition was an appropriate mechanism when a judge refused to disqualify himself for cause despite a party's allegation that the judge had an interest in the outcome of the litigation by virtue of personal stockholdings in a corporation whose interests might have been affected by the litigation. The Court concluded that the writ would not interfere with the judge's discretion because "he had no discretion in the matter" and was disqualified as a matter of law without regard to the judge's subjective beliefs about his ability to remain impartial. *Id.*, at 512, 283 P. at 43–43. Likewise, in *Price v. Featherstone*, 64 Idaho 312, 130 P.2d 853 (1942), this Court in an original proceeding issued a writ of review against a judge who had denied a motion for disqualification because he thought a motion to disqualify was not available in a divorce modification proceeding. This Court vacated the judge's orders, not because he had abused his discretion, but because he had erred as a matter of law. *Price*, 64 Idaho at 317–18, 130 P.2d at 855.

■ The district court in this case concluded that Judge Morden's decision as to whether a motion for disqualification under

I.C.R. 25(a) was brought to "hinder, delay or obstruct the administration of justice" was a discretionary act. We disagree. There is no discretionary act involved in ruling upon a motion under I.C.R. 25(a)(1) because any motion brought in conformity with the rule must be granted as a matter of right. The last sentence of I.C.R. 25(a)(1) which condemns the filing of a motion to disqualify in order to "hinder, delay or obstruct the administration of justice" does not supply the basis for an exercise of discretion by the judge against whom the motion is made.

The next issue we must decide is whether or not Bower had a "plain, speedy and adequate remedy" available other than the writs. We hold that he did not.

The district court made a factual finding that the appellate process was adequate as a remedy for the adverse rulings of Judge Morden that had initially given rise to Bower's perception that Morden was biased against the prosecution. However, this finding by the district court frames the issue incorrectly. Our analysis of the appropriateness of the writs is focused on the availability of a remedy for the allegedly improper denial of the disqualification, not the availability of a remedy in previous cases that may have contributed to Bower's motivation for asserting the disqualification motions in subsequent cases.

While not specifically finding it to be an adequate alternative remedy to seeking the writs, the district court did note that Bower had never availed himself of an interlocutory appeal of the denial of any disqualification motion by permission. We believe the district court's finding on this point is incorrect. I.A.R. 12(a) limits application for permission to take an interlocutory appeal in criminal cases to the defendant. Moreover, the denial of a disqualification motion is not a final order for purposes of appeal under I.A.R. 11(c). Therefore, an interlocutory appeal was not available as a remedy to Bower.

Of course, Bower could take a direct appeal of the denial of a disqualification motion. This Court has addressed a direct appeal of a denial of an automatic disqualification motion filed pursuant to I.C.R. 25(a) on direct appeal in *State v. Schaffer*, 112 Idaho 1024, 739 P.2d

323 (1987). Cf., *State v. Bearshield*, 104 Idaho 676, 662 P.2d 548 (1983) (holding on direct appeal that denial of disqualification motion brought under I.R.C.P. 40(d)(1) was improper, reversing lower court's holding that the motion was not timely filed). However, the mere fact that direct appeal is available does not necessarily establish that it is an adequate remedy in this case.

■ Because there is no discretion to grant or deny a motion for disqualification under I.C.R. 25(a), and because no adequate appellate remedy at law was available to Bower, we hold that the writs of mandate and prohibition may issue against Judge Morden for denying Bower's motions for disqualification. We now turn to the question of whether, in light of the number of disqualification motions filed by Bower, the writs should issue.

**B. Motions For Disqualification Under I.C.R. 25(a) Must Be Granted Irrespective Of How Often A Party Moves To Disqualify A Particular Judge.**

■ In this case, there is no dispute that Bower's individual motions were each timely filed in conformity with I.C.R. 25(a)(1). Thus, each disqualification motion, if viewed alone, would have to be granted. Judge Morden urges that the number of disqualification motions filed by Bower against Judge Morden, viewed in aggregate, converted the individual conforming motions to non-conforming motions subject to denial. We hold that it did not.

■ The single ground upon which the district court found that Bower had abused I.C.R. 25(a) was its conclusion that Bower's blanket motions were an improper attempt to influence Judge Morden's future rulings on issues of law. We do not embrace this conclusion. Bower's disqualification motions could not have affected Judge Morden's future rulings on issues of law because, if Bower's disqualification motions were granted, there would be no more rulings of law by Judge Morden in cases where Bower was a party.

■ Judge Morden suggests that Bower's blanket motions are a usurpation of the judiciary's power. Pointing to Article 5, § 2 of the Idaho Constitution, Judge Morden contends that, because the Supreme Court administers and supervises the judiciary pursuant to constitutional mandate, Bower's blanket motions invade that exclusively judicial function. He argues that the number of Bower's motions resulted in removing him entirely from the criminal docket. This Court clearly contemplated disqualification as a matter of right in promulgating I.C.R. 25(a)(1) without any language limiting the number of times a party may invoke the rule as against a single judge. Therefore, Bower's motions cause no divestiture of this Court's constitutional power.

■ We also disagree with the district court's conclusion that Judge Morden's blanket denials were an abuse of discretion because, as explained above, no discretion ought to have been involved in ruling on Bower's motions. However, we affirm the district court's conclusion that Judge Morden's denial of Bower's motions was impermissible on the alternative basis that inherent in the right to disqualification as a matter of right is the prohibition of a blanket denial of such motions.

## CONCLUSION

The judgment of the district court denying Bower's motion to issue the writs of mandate and prohibition is reversed. The writ of mandate directing Judge Morden to grant the motions to disqualify is hereby issued. The declaratory judgment is affirmed to the extent that it prohibits Judge Morden from denying Bower's disqualification motions and those portions limiting Bower's right to file disqualification motions are reversed. No costs on appeal.

JOHNSON and TROUT, JJ., concur.

SILAK, Justice, joined by BISTLINE, Justice, dissenting.

The Court's decision today compellingly demonstrates why Idaho Criminal Rule 25(a) needs to be substantially revised. As it is presently written and is today interpreted by the Court, I.C.R. 25(a) is readily susceptible to abuse by any party who litigates with great frequency in a single judicial district. I write separately both to explain my disagreements with the Court's reasoning, and to suggest that the rule be rewritten.

The relevant portion of I.C.R. 25(a) provides as follows: "A motion for disqualification without cause shall not be made under this Rule to hinder, delay or obstruct the administration of justice." The Court holds that this prohibition is nothing more than cautionary language. I do not believe that to be the case. Rather, I believe the language was included as a very important safety valve to prevent exploitation of the disqualification process.

The Court's explanation as to why no discretionary act is involved in ruling upon a motion under I.C.R. 25(a) is supported by circular reasoning. The Court states that no judicial discretion is implicated because "any motion brought in conformity with the rule must be granted as a matter of right." Of course, that argument revolves upon itself when examined to discern how, in the first instance, any determination that a motion is not brought to "hinder, delay or obstruct the administration of justice" could ever take place. The plain language of I.C.R. 25(a) necessarily requires that the involved judge decide whether or not a disqualification motion is being filed for a forbidden purpose. By definition, that decision-making process implicates judicial discretion. Therefore, here the Court should have concluded that the writs of mandate and prohibition were unavailable on the basis of the "discretionary act" exception. *See Bopp v. City of Sandpoint*, 110 Idaho 488, 490, 716 P.2d 1260, 1262 (1986) ("writs of mandate (and their counterpart, prohibition) will not issue to compel the performance of a purely discretionary function").[2]

2. Because I believe the writs should not issue against a discretionary function, it is unnecessary for my analysis to determine whether Bower has an adequate appellate remedy for review of a disqualification decision under I.C.R. 25(a). Nevertheless, I do agree with the Court that none exists for Bower and I would not advocate revising I.C.R. 25(a) to create one. The peremptory

Because the Court has decided that the right to disqualification under I.C.R. 25(a) is absolute, it does not proceed to provide proper criteria to guide a judge in deciding whether a motion to disqualify is brought to "hinder, delay or obstruct the administration of justice." In dissenting from that conclusion, I offer a framework that I believe is the proper interpretation of I.C.R. 25(a) and which ought to be made explicitly so through revision of the rule.

I agree with the Court that Bower's motions were not an attempt to influence Judge Morden's future rulings on issues of law because, if granted, Judge Morden would be removed from all of Bower's cases. However, I believe we must look beyond that point to measure the systemic damage that "blanket" disqualification motions such as these can cause.

In *State v. City Court of the City of Tucson*, 150 Ariz. 99, 722 P.2d 267 (1986), the Arizona Supreme Court was confronted with a similar situation and analyzed the broader impacts of blanket disqualification motions. In *City of Tucson*, the court held that a prosecutor's policy of having deputy prosecutors disqualify certain judges under a rule similar to Idaho's was an abuse of the rule because it was an attempt to intimidate all of the judges, not just those targeted for disqualification. This rationale has application here. Even if Bower filed blanket motions against Judge Morden and refrained from filing any disqualification motions against other magistrate judges so that Judge Morden was never the reassigned judge in any case of Bower's, the other magistrate judges would still be put on notice that if their

rulings should become less acceptable to Bower than those of Judge Morden, Bower has the power to redirect his blanket motions and remove an individual judge from the criminal bench. That possibility exposes the separation of powers violation underlying this entire dispute.

I disagree with the Court's conclusion that Bower's blanket motions are not an invasion of the judiciary's power. Article 5, § 2 of the Idaho Constitution does invest this Court with exclusive power to administer and supervise the judiciary. Therefore, Bower is not constitutionally authorized to use disqualification motions in such number so as to effect the functional equivalent of a reassignment of a magistrate judge (an objective Bower openly conceded).[3]

On the basis of the above considerations, the Court should have concluded that blanket disqualification motions of this type are an obstruction of the administration of justice within the meaning of I.C.R. 25(a) and proceeded to supply some definition of "blanket" in order to provide guidance for the future. The district court did attempt to do that by directing that Bower was permitted to file disqualification motions only in "selected cases for perceived bias." If that phrase is understood to mean only selected cases in which Bower perceives bias by Judge Morden based on the specific facts of the case, then the standard becomes a "quasi-cause" standard that takes away the peremptory challenge characteristic that I.C.R. 25(a) was designed to provide. Moreover, given that the motions need not state a basis for disqualification, any attempt to invoke discre-

---

disqualification of a judge without cause under I.C.R. 25(a) is similar to the peremptory disqualification of a potential juror. That process is similarly subject to discretionary decision-making in limited instances of abuse such as impermissible challenges based on race or gender, decisions for which there is no corresponding right to interlocutory appellate review.

**3.** The importance of these separation of powers concerns has been recognized in *People v. Wharton*, 136 Ill.2d 423, 144 Ill.Dec. 786, 556 N.E.2d 253 (1990). In *Wharton*, the Supreme Court of Illinois concluded that a prosecutor who was using multiple disqualification motions against a single judge would be unconstitutionally invading the administrative duties of the judiciary if

his goal was to effect a reassignment of the undesirable judge.

These separation of powers principles are equally important under the Idaho Constitution. Although the office of prosecuting attorney is a "quasi-judicial" position pursuant to Article 5, § 18 of the Idaho Constitution, it is also one charged with the performance of "executive functions." *See State v. Wharfield*, 41 Idaho 14, 17, 236 P. 862, 863 (1925). Therefore, the separation of powers principles established in Article 2, § 1 of the Idaho Constitution must be understood to prohibit a prosecuting attorney from appropriating the judicial administrative powers exclusively granted to this Court in Article 5, § 2.

tion by Judge Morden employing this standard would be mere speculation as to whether a particular case was more of the type that Bower wanted him removed from than any other.

I believe a more balanced construction would be one that allowed Bower to disqualify Judge Morden from as many cases as he chooses, so long as it is not grossly disproportionate to the number of motions filed against other magistrate judges. Such a standard would allow Bower to disqualify Judge Morden without potential for improperly influencing other magistrate judges. Additionally, it would also constrain unlimited disqualification to the extent that a litigant filing disqualification motions should receive a judge as a reassignment judge approximately as many times as the judge is disqualified by the litigant from other cases.

I also conclude that Judge Morden's practice of issuing blanket denials without any type of hearing[4] was an abuse of discretion because he failed to utilize any discretion by denying all of the motions without considering whether under I.C.R. 25(a) Bower was entitled to disqualify him from some cases. By this I do not mean to suggest that Judge Morden must rule in a vacuum such that he cannot look beyond an individual motion and examine Bower's disqualification pattern. When a judge is faced with blanket disqualification motions, the exercise of discretion occurs in a larger context than the individual motion, for the judge should evaluate the pattern of blanket motions and act upon them collectively after a hearing. At that point, a judge ought to be able to deny enough of the motions to maintain or restore approximate equilibrium to the administrative assignment of cases.

For the foregoing reasons, I would affirm the order of the district court in part, reversing only those portions indicated herein.

---

4. The right to some type of abbreviated hearing necessarily corresponds with the recognition that ruling on a disqualification motion under I.C.R. 25(a) is a discretionary function. At the point that the issue of abuse is raised by the court or the opposing party, some opportunity to be heard is appropriate.