# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48766

In Re: Petition for Writ of Mandamus )
and/or Writ of Prohibition. )
------------------------------------------------ )
HEPWORTH HOLZER, LLP, )
)
   Petitioner, )
) **Boise, August 2021 Term**
v. )
) **Filed: October 8, 2021**
FOURTH JUDICIAL DISTRICT OF THE )
STATE OF IDAHO; HONORABLE LYNN G. ) **Melanie Gagnepain, Clerk**
NORTON, District Judge, )
)
   Respondents, )
)
and )
)
BOGUS BASIN RECREATIONAL )
ASSOCIATION, INC., )
)
   Intervenor. )
_____ )

Petition for Issuance of a Writ of Mandamus and/or Writ of Prohibition,
an original proceeding before the Supreme Court of the State of Idaho.

The Petition for a Writ of Mandamus is <u>granted</u>.

Hepworth Holzer, LLP, Boise, attorneys for Petitioner. John Janis argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondents
Fourth Judicial District and Judge Norton. Christine Salmi argued.

Elam & Burke, P.A., Boise, attorneys for Intervenor, Bogus Basin. Joseph Pirtle argued.
_____

BEVAN, Chief Justice.

    The law firm Hepworth Holzer, LLP ("Hepworth Holzer" or "the firm"), petitions this Court for a writ of mandamus or prohibition, seeking relief from a district court order disqualifying it as counsel for Dr. Gary Tubbs in a personal injury lawsuit against Bogus Basin Recreational

1

Association, Inc. ("Bogus Basin"). Bogus Basin was represented by Elam & Burke in the proceedings. Elam & Burke moved to disqualify Hepworth Holzer after an associate attorney who worked at Elam & Burke when Tubbs initiated his lawsuit went to work for Hepworth Holzer and assisted the firm on a memorandum in support of a motion to reconsider filed in the case. The district court granted Elam & Burke's motion. The district court ordered that "[a]ny attorney associated with Hepworth Holzer, LLP, including [the associate attorney], are disqualified from any further representation of [Dr.] Gary Tubbs in this matter and from providing any information from its files after January 21, 2021, and cannot relay any information discussed or received about this case after January 21, 2021[,] to Tubbs or any new attorney/firm representing Tubbs." Hepworth Holzer contends the district court's disqualification and gag order is clearly erroneous and unconstitutional.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Gary Tubbs was severely injured in a bicycle accident that occurred on Bogus Basin's property. In 2019, Tubbs hired Hepworth Holzer to represent him on a contingency fee basis in a personal injury lawsuit against Bogus Basin. John Janis was the primary attorney representing Tubbs. Elam & Burke represented Bogus Basin. The case proceeded to summary judgment, where Bogus Basin argued that Tubbs' claims were barred because, after the accident, he signed three waiver agreements releasing Bogus Basin from any and all liability or claims arising from Tubbs' use of the Bogus Basin ski area. After Elam & Burke filed Bogus Basin's motion for summary judgment, but before a final judgment was entered, an associate attorney working for Elam & Burke resigned and started working for Hepworth Holzer. Later, the district court granted summary judgment to Bogus Basin. After working at Hepworth Holzer for one month, the associate attorney helped draft a memorandum in support of a motion for reconsideration in Tubbs' case. In the motion to reconsider, Tubbs allegedly raised a new legal argument that Bogus Basin claimed was attributable to the associate attorney's prior communications and access to internal files while he was still an attorney for Elam & Burke.

Bogus Basin moved to disqualify Hepworth Holzer from representing Tubbs based on the alleged conflict of interest. In support of its motion, Bogus Basin submitted emails between the associate attorney and Joseph Pirtle, an Elam & Burke attorney, in which Pirtle discussed the upcoming summary judgment deadline in the case and asked the associate attorney about a particular legal theory. Pirtle also filed a declaration that stated he and the associate attorney had

2

conversations about the summary judgment motion. Another Elam & Burke attorney, Matthew Walters, submitted an affidavit to the district court *in camera*. That affidavit more directly detailed a discussion Walters had with the associate attorney while the associate was working for Elam & Burke. The discussion related to a legal theory Walters had used in another case that Walters intended to rely on in the Tubbs case. Walters' affidavit and the emails were not provided to Hepworth Holzer based on the district court's finding that they contained confidential information.

Ultimately, Bogus Basin's motion alleged the associate attorney did research and had knowledge of work product and strategy in defending the case against Tubbs based on his employment with Elam & Burke. Bogus Basin alleged the associate attorney's conflict was imputed to the entire firm under Idaho Rule of Professional Conduct ("I.R.P.C.") 1.10. Tubbs opposed the motion, supported by the declaration of Hepworth Holzer attorney John Janis. The associate attorney also submitted a declaration in which he adamantly denied: (1) ever having represented Bogus Basin while employed by Elam & Burke, (2) having otherwise obtained any confidential information about Bogus Basin, or (3) having used any information related to Bogus Basin to its disadvantage. In support, the associate attorney emphasized that he did not bill Bogus Basin for any legal services—highlighting the brief nature of his involvement in the case.

After considering the conflicting testimony, the district court found that, although the associate attorney did not represent Bogus Basin during his time at Elam & Burke, he possessed confidential information and had access to internal case files. Of particular importance to the district court, was that the associate attorney provided Pirtle a brief that Walters had filed in an unrelated 2014 Bogus Basin matter—before the associate attorney's employment at Elam & Burke—that allegedly came from a sealed court case. Thus, the district court found that the associate attorney could have only retrieved that memorandum from his search of Elam & Burke's files.

The district court found the associate attorney violated I.R.P.C. 1.9(b) and (c) because he "switched sides" when he started working at Hepworth Holzer and helped draft the memorandum in support of the motion for reconsideration. The court noted that while almost every argument in the motion for reconsideration could be traced to John Janis' work that was submitted to the court before the associate attorney joined the firm, there was "no *de minim[i]s* rule when it comes to protecting confidential information or barring an attorney from representing both sides in the litigation."

3

Despite finding that most of the motion's argument was Janis' work, the district court held that a single novel argument was based on confidential information the associate attorney gained while employed at Elam & Burke. Thus, the court found that the associate attorney violated I.R.P.C. 1.9(b) by working on the case without obtaining Bogus Basin's written informed consent. The court also found that under I.R.P.C. 1.10, the associate attorney's conflict was imputed to Hepworth Holzer because the firm did not screen the associate attorney from participating in the case. Finding that Hepworth Holzer's continued representation of Tubbs would be a continuing violation of the Rules of Professional Conduct, and that Bogus Basin would be damaged otherwise, the district court held that Hepworth Holzer must terminate its representation of Tubbs. The district court granted Bogus Basin's motion to disqualify and struck the memorandum Hepworth Holzer had filed in support of Tubbs' motion for reconsideration from the record. The district court also ordered that Hepworth Holzer could not share any information from its files or speak to Tubbs or any other attorney about information discussed or received after January 21, 2021—the date the associate attorney was hired. Hepworth Holzer petitioned this Court for a writ of mandamus or a writ of prohibition. This Court issued a stay in the district court proceedings and granted Bogus Basin's petition to intervene.

## II. ISSUES ON APPEAL

**1.** Does Hepworth Holzer have standing to obtain the relief requested?

**2.** Did the district court lack jurisdiction to issue the disqualification order?

**3.** Should this Court issue a writ of prohibition or writ of mandamus to address the district court's order disqualifying Hepworth Holzer as Tubbs' counsel?

**4.** Should Judge Norton be disqualified for cause if the case is remanded?

## III. STANDARD OF REVIEW

This Court maintains "original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. "Any person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction." I.A.R. 5(a). "This original jurisdiction is limited only by the separation of powers provisions contained in Article II, Section 1 of the Idaho Constitution and this Court's own rules." *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020) (citing *Mead v. Arnell*, 117 Idaho 660, 663, 791 P.2d 410, 413 (1990)).

4

A writ of mandate may be issued "to any inferior tribunal . . . to compel the admission of a party to the use and the enjoyment of a right or office for which he is entitled, and from which he is unlawfully precluded by such inferior tribunal. . . ." I.C. § 7-302. The writ is only available in limited circumstances "where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested." I.C. § 7-303. A writ of mandamus is not a writ of right, and this Court's choice to issue a writ is discretionary when compelled by urgent necessity. *Regan v. Denney*, 165 Idaho 15, 20, 437 P.3d 15, 20 (2019).

The writ of prohibition is substantially similar in both scope and limitation: "It may be issued by the [S]upreme [C]ourt or any district court to an inferior tribunal, or to a corporation, board or person in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit on the application of the person beneficially interested." I.C. § 7-402. "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." I.C. § 7-401.

"Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 403 (1976) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 112 n. 8, (1964); *Parr v. United States*, 351 U.S. 513, 520 (1956)). We thus recognize and exercise our own discretion in this matter.

## IV. ANALYSIS

### A.     Hepworth Holzer has standing to bring this action.

Before the Court can reach the merits of Hepworth Holzer's petition, it must determine whether the firm has standing. "It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing." *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 391, 414 P.3d 205, 213 (2018) (quoting *Gallagher v. State*, 141 Idaho 665, 668, 115 P.3d 756, 759 (2005)). Standing is a jurisdictional issue, a question of law over which this Court exercises free review. *State v. Philip Morris, Inc.*, 158 Idaho 874, 879, 354 P.3d 187, 192 (2015). As a question of jurisdiction, this Court must address standing before reaching the merits of the case. *Valencia v. Saint Alphonsus Med. Ctr. - Nampa, Inc.*, 167 Idaho 397, 401–02, 470 P.3d 1206, 1210–11 (2020).

5

Standing determines whether an injury is adequate to invoke the protection of a judicial tribunal. *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015). Standing only focuses on the party seeking relief, not on the issue the party wishes to adjudicate. *Haight*, 163 Idaho at 391, 414 P.3d at 213. To establish standing, a party must allege or show: (1) a distinct palpable injury in fact, (2) a substantial likelihood the judicial relief requested will prevent or redress the claimed injury, and (3) a causal connection fairly traceable between the injury and the conduct complained of. *Valencia*, 167 Idaho at 402, 470 P.3d at 1211.

An injury sufficient to satisfy the requirement of an injury in fact must be concrete and particularized and actual or imminent; it cannot be conjectural or hypothetical. *Philip Morris,* 158 Idaho at 881, 354 P.3d at 194. Standing requires a showing of a distinct palpable injury, which this Court has defined as an injury that is easily perceptible, manifest, or readily visible. *Id.* Mere allegations cannot support standing. *Id.* at 882, 354 P.3d at 195. Rather, the party invoking this Court's jurisdiction must establish facts supporting the alleged injury. *Id.* In addition, "[s]tanding's redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Valencia*, 167 Idaho at 402, 470 P.3d at 1211 (quoting *Tucker v. State*, 162 Idaho 11, 24, 394 P.3d 54, 67 (2017)). The redressability element requires the party requesting relief show the distinct palpable injury has a fairly traceable causal connection to the challenged conduct. *Id.*

Hepworth Holzer suffered a distinct and palpable injury from the district court's order that it cease all representation and communication with Tubbs. The firm had invested significant time, money, and resources into its representation of Tubbs. The value of its reputation and standing in the local legal community is also at stake. Not only did the district court's order preclude the firm's ability to recover any financial benefit of that representation, but it also placed Hepworth Holzer in breach of its contract with Tubbs. Hepworth Holzer's injury is directly connected to the district court's order; thus, Hepworth Holzer has standing to petition this Court for relief.

**B.      The district court had jurisdiction to issue the disqualification order.**

Hepworth Holzer argues that the district court's finding that the firm violated I.R.P.C. 1.9(b) and (c) improperly usurped the Idaho State Bar's disciplinary function. It also argues the district court exceeded its jurisdiction in three ways: (1) by applying the burden of proof to Hepworth Holzer; (2) by imputing the conflict to the entire firm; and (3) by ruling disqualification was mandatory. In addition, Hepworth Holzer contends it could not adequately challenge the

6

allegation that the associate attorney provided it confidential information because the evidence offered by Elam & Burke was viewed *in camera*, and thus Hepworth Holzer never got the chance to see it. Hepworth Holzer requests a writ of prohibition vacating the district court's order and allowing it to serve as counsel for and communicate with Tubbs.

"A writ of prohibition serves a fundamental but narrow purpose. Its office is to determine if the body whose action is challenged was attempting to act without or in excess of its jurisdiction." *Clark v. Meehl*, 98 Idaho 641, 642, 570 P.2d 1331, 1332 (1977). The word "jurisdiction" in this context includes the power or authority given by law. *Wasden ex rel. State v. Idaho State Bd. of Land Comm'rs*, 150 Idaho 547, 552, 249 P.3d 346, 351 (2010). Prohibition arrests proceedings that are without or in excess of the court's power, and the writ will not issue when its effectiveness is doubtful. *Id.* at 553, 249 P.3d at 352. If the writ will not effectively prevent the respondents from acting without or in excess of their jurisdiction, it would merely be an idle gesture. *Id.* at 553–54, 249 P.3d at 352–53.

Hepworth Holzer cites *Kosmann v. Dinius*, 165 Idaho 375, 384–85, 446 P.3d 433, 442–43 (2019), arguing that the authority to sanction attorneys for ethical rule violations belongs solely to the Idaho State Bar and not to trial judges. Indeed, we did recognize the axiom stated in the preamble to the rules that "[t]he Rules [of Professional Conduct] are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." *Id.* at 385, 446 P.3d at 443 (quoting I.R.P.C., Scope, 20). That said, resolving a matter regarding a potential conflict of interest, when properly raised, is precisely the kind of ethical question that trial courts may properly address during litigation. *See*, *e.g.*, *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 325, 297 P.3d 1134, 1142 (2013) (citing *Foster v. Traul,* 145 Idaho 24, 32, 175 P.3d 186, 194 (2007)); *Weaver v. Millard*, 120 Idaho 692, 696–97, 819 P.2d 110, 114–15 (Ct. App. 1991).

Thus, *Kosmann* is limited to its facts; it involved an attempt by counsel to have the trial court sanction the opposing attorney. Sanctioning a lawyer is characteristically a matter for the Idaho State Bar, not the trial courts. *See Kosmann*, 165 Idaho at 385, 446 P.3d at 443. Here, the district court was asked to decide a motion to disqualify—that is, whether a conflict existed. Deciding such matters, even if those matters are grounded in the ethical rules, is a proper discretionary decision to be made by the trial courts of this state. *See Foster,* 145 Idaho at 32, 175 P.3d at 194 (analyzing whether the district court abused its discretion by declining to disqualify

7

counsel for violating I.R.P.C. 1.12(a)); *Weaver*, 120 Idaho at 698, 819 P.2d at 116 (holding that the district court did not abuse its discretion by declining to disqualify counsel based on an alleged violation of I.R.P.C. 1.7); *State v. Severson*, 147 Idaho 694, 215 P.3d 414 (2009) (holding that the trial court conducted the proper inquiry into a potential conflict of interest to decide whether it needed to disqualify counsel). Here, the district court used its discretion to grant Bogus Basin's motion to disqualify Hepworth Holzer based on an imputed conflict of interest. A writ of prohibition is not appropriate here because the district court did not exceed its jurisdiction in issuing the disqualification order. Hepworth Holzer's request to enter such a writ is therefore denied.

**C.    We grant Hepworth Holzer's request for a writ of mandamus because the district court erred in issuing the disqualification order.**

Hepworth Holzer argues an extraordinary writ is the proper mechanism to challenge the district court's order, despite the court's discretionary power to disqualify counsel, because the district court erred as a matter of law. "Once this Court has asserted its original jurisdiction, it may issue writs of mandamus and/or prohibition." *Mead*, 117 Idaho at 663–64, 791 P.2d at 413–14. Still, this Court has traditionally held that writs of mandate and prohibition will not issue to compel the performance of a purely discretionary function. *Bower v. Morden*, 126 Idaho 215, 218, 880 P.2d 245, 248 (1994); *see also State v. Dist. Ct. of Fourth Jud. Dist.*, 143 Idaho 695, 700, 152 P.3d 566, 571 (2007) (Matters which fall into the discretion of the trial court are "not proper for a writ of mandate or prohibition, which can issue only in matters where there is no discretion to be exercised."). That said, if a judge errs as a matter of law, this Court may issue a writ. *Bower*, 126 Idaho at 218, 880 P.2d at 248 (citing *Price v. Featherstone*, 64 Idaho 312, 317–18, 130 P.2d 853, 855 (1942)).

As discussed above, the trial court's discretionary powers include the decision to grant or deny a motion to disqualify counsel. *Foster,* 145 Idaho at 32, 175 P.3d at 194. Thus, the decision whether to disqualify counsel is subject to review under an abuse of discretion standard. *Weaver*, 120 Idaho at 696, 819 P.2d at 114. Under this standard, the relevant inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). A party seeking disqualification bears the burden

of proving the grounds for disqualification. In this context, " '[t]he goal of the court … [is] to shape a remedy which will assure fairness to the parties and the integrity of the judicial process' " and " '[w]henever possible, courts should endeavor to reach a solution that is least burdensome to the client.' " *Foster*, 145 Idaho at 32, 175 P.3d at 194 (quoting *Weaver*, 120 Idaho at 697, 819 P.2d at 115).

Other jurisdictions have considered mandamus relief for an order disqualifying counsel even though it is a discretionary decision. For example, in Nevada, "a writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion" and "[the appellate C]ourt has consistently held that mandamus is the appropriate vehicle for challenging orders that disqualify counsel." *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 740 (Nevada 2007) (stating that a district court's discretion in disqualifying counsel is broad and will not be set aside absent an abuse of discretion).

The Supreme Court of Texas has also held that it will grant mandamus relief if the trial court abused its discretion because a party whose counsel was improperly disqualified has no adequate remedy by appeal. *In re RSR Corp.*, 475 S.W.3d 775, 778 (Texas 2015). The United States Supreme Court held that "a party may seek . . . a writ of mandamus from the court of appeals" in "the exceptional circumstances for which it was designed." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985). "Mandamus may be an appropriate method to review the disqualification of counsel, where no other adequate remedy is available." 55 C.J.S. Mandamus § 134. The petitioner must establish the lack of an adequate remedy to review a trial court's decision on a motion to disqualify, such as review after a timely appeal. *Id.*

Hepworth Holzer relies on the framework adopted by the Ninth Circuit, which has recognized that a writ of mandamus can be used to review disqualification of counsel because the harm of such disqualification cannot be corrected with an ordinary appeal. *Cole v. U.S. Dist. Court for the Dist. of Idaho*, 366 F.3d 813 (9th Cir. 2004). Whether a writ of mandamus should be granted is determined case-by-case, weighing the following factors, (known as *Bauman* factors):

> [W]hether (1) the party seeking the writ has no other means, such as a direct appeal, of attaining the desired relief, (2) the petitioner will be damaged in a way not correctable on appeal, (3) the district court's order is clearly erroneous as a matter of law, (4) the order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and (5) the order raises new and important problems, or issues of law of first impression.

9

*Id.* at 816–17 (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977)). In addition, these "factors should not be mechanically applied. *See Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989). "Evidence showing that all the *Bauman* factors are affirmatively presented by a case does not necessarily mandate the issuance of a writ, nor does a showing of less than all, indeed of only one, necessarily mandate denial; instead, the decision whether to issue the writ is within the discretion of the court." *Cole*, 366 F.3d at 817 (citing *Kerr*, 426 U.S. at 403).

We adopt this framework used by the Ninth Circuit and hold that a writ of mandamus is an appropriate method for reviewing a trial court's decision to disqualify counsel. We must now determine whether Hepworth Holzer has satisfied any of these five factors in this case.

### a. Whether the party seeking the writ has no other means, such as a direct appeal, of attaining the desired relief.

First, Hepworth Holzer argues that it has no access to a direct appeal, nor does Tubbs. Typically, "[t]his factor is affirmatively presented in the context of a disqualification of counsel when the petition arises from the action of a district court." *Cole*, 366 F.3d at 817. If Hepworth Holzer were to attempt to bring a direct appeal it would expose itself to sanctions for contempt based on the terms of the district court's disqualification and gag order. Thus, the first factor is satisfied. Moreover, although Tubbs technically has the power to file an appeal on his own behalf, that is not a viable option when his counsel has just been removed. "The mere fact that direct appeal is available does not necessarily establish that it is an adequate remedy . . . ." *Bower*, 126 Idaho at 219, 880 P.2d at 249. A party's option to appeal an order disqualifying counsel presents itself as a unique paradox. Typically, the party whose counsel has been disqualified will have to challenge that decision without the advice or assistance of their disqualified counsel. When a party lacks the resources necessary to find new counsel or continue litigation pro se, which has been established by the record before us, an appeal is not an adequate remedy to challenge an order disqualifying counsel. We find the first factor to be satisfied.

### b. Whether the petitioner will be damaged in a way not correctable on appeal.

Second, Hepworth Holzer claims it and Tubbs will be damaged in a way that is not correctable on appeal because Tubbs will be unable to find new counsel that would understand the case in the same depth nor be able to explain the actual risks and benefits to an appeal. "Except for compelling reasons, such as necessary bar admissions, clients should be permitted to have the

10

counsel of their choice." *Cole*, 366 F.3d at 820. Not only does the district court's order prejudice Tubbs by denying him access to the counsel of his choice, as explained above, Hepworth Holzer and Tubbs suffered immediate damage when the district court issued its order requiring that the firm cease all representation and communication with Tubbs. The firm had invested significant time, money, and resources into its representation of Tubbs and the district court's order precluded its ability to recover any financial benefit from the proceedings. Even if Tubbs could appeal pro se or with new counsel (which are each difficult propositions at best), Hepworth Holzer would be left without a remedy for the time and resources it invested in the case. Consequently, we find this factor to be satisfied.

   *c. Whether the district court's order is clearly erroneous as a matter of law.*

  Third, Hepworth Holzer alleges that the district court's order was clearly erroneous as a matter of law because it: (1) relied on the position that the 2014 memorandum was confidential information because it was in a "sealed" case despite its availability on Westlaw, and (2) failed to disclose what confidential legal argument the associate attorney raised. First, the 2014 case was not sealed, and the 2014 memorandum's availability on Westlaw (a fact which is established by the record[1]) precludes that as a basis for the district court's decision.

  It is also problematic that the district court did not disclose what confidential argument the associate attorney purportedly raised. "Ninth Circuit law does not permit a summary disqualification of counsel; for the court to sanction an attorney, procedural due process requires notice and an opportunity to be heard." *Cole*, 366 F.3d at 821; *See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) ("[A]n attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard.") (quoting *Weissman v. Quail Lodge Inc.,* 179 F.3d 1194, 1198 (9th Cir. 1999)); *see also Martens v. Thomann*, 273 F.3d 159, 175 (2d Cir. 2001) ("We have held that due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions."). The total denial of such ordinary protections results in a denial of due process which is antithetical to our system

---

[1] We note that the record in this case was supplemented after oral argument with the materials reviewed by the district court *in camera*. We have fully reviewed these materials and rely upon them in making our decision.

11

of justice. Thus, we hold that the procedural due process must be provided, even to opposing counsel in these unusual circumstances.

Here, the district court entered its disqualification and gag order based on its review of documents Elam & Burke submitted to the district court *in camera*. The documents were not provided to Hepworth Holzer, leaving the firm with no recourse or ability to challenge the district court's decision, inasmuch as it could not know the basis for the district court's ruling. The district court erred as a matter of law by limiting Hepworth Holzer's opportunity to be heard and preventing the firm's ability to meaningfully respond to Bogus Basin's claims of impropriety.

> ### d. Whether the order is an oft-repeated error or manifests a persistent disregard of the applicable rules.

Fourth, Hepworth Holzer argues that the district court clearly erred in failing to apply the established standards used to evaluate a motion to disqualify by improperly reviewing the motion under I.R.P.C. 1.16; failing to fashion an appropriate remedy; reversing the burden of proof; failing to evaluate the tactical nature of the motion; and ignoring that the facts show the associate attorney did not engage in any inappropriate conduct.

The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court. *Weaver*, 120 Idaho at 696, 819, P.2d at 114. That said, motions to disqualify are generally disfavored. *Foster*, 145 Idaho at 32–33, 175 P.3d at 194–95. In *Weaver*, the Idaho Court of Appeals established a four-part test to determine whether an appearance of impropriety alone will give a party standing to interfere with an adverse party's choice of counsel:

(1) Whether the motion is being made for the purposes of harassing the [opponent;]

(2) Whether the party bringing the motion will be damaged in some way if the motion is not granted[;]

(3) Whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances[;] and

(4) Whether the possibility of public suspicion will outweigh any benefits that might accrue to continued representation.

*Id*. (quoting *Weaver*, 120 Idaho at 698, 819 P.2d at 116). In deciding a motion to disqualify, "[t]he goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client." *Id*.

After acknowledging these standards, the district court found that "Hepworth Holzer's continued representation of Tubbs would result in a continuing violation of the rules of

12

professional conduct, so Hepworth Holzer must terminate their representation of Tubbs." The court struck Hepworth Holzer's memorandum in support of the motion to reconsider from the record but allowed the motion to remain, concluding this was the "least damaging possible [sic] under the circumstances for the parties." The district court then ordered that no attorney from Hepworth Holzer could provide any information from its files, received after the associate attorney joined the firm, to Tubbs or any new attorney representing him.

In imposing these immoderate penalties, the district court failed to fashion a remedy "least burdensome to the client." Indeed, we view the nature of the alleged conflict to be *de minimis* at best, particularly where the so-called "new argument" was contained in a publicly available database. Although this Court is mindful of the alleged disadvantage to Bogus Basin asserted here, the record is clear that the associate attorney had negligible contact with the case while he was employed at Elam & Burke. The associate attorney did not bill for any time related to Tubbs' case while at Elam & Burke. Although the failure to bill for his time is not the only consideration, it signifies the peripheral involvement the associate attorney had with the case while he was still employed by Elam & Burke. The district court thus erred and violated the third prong of *Lunneborg*, by failing to act consistently with the legal standards applicable to the specific choices available to it. 163 Idaho at 863, 421 P.3d at 194. The district court failed to fashion a reasonable remedy, least burdensome to Tubbs, based on these circumstances.

Hepworth Holzer also argues the district court shifted the standard of proof from Elam & Burke, as the moving party, to Hepworth Holzer. The firm argues that this shift required Hepworth Holzer to prove that the associate attorney did not have confidential information, even though Idaho law holds that the moving party has the burden of establishing grounds for disqualification. *Foster*, 145 Idaho at 32, 175 P.3d at 194 (quoting *Weaver*, 120 Idaho at 697, 819 P.2d at 115). Given our conclusion that the district court erred in failing to fashion the least burdensome remedy available in this case, we will not address these claims, other than to note that the burden is on the party moving to disqualify counsel during litigation. The burden of proof rests on the firm whose disqualification is sought only when such allegations are brought before the Bar. *See* I.R.P.C. 1.6 and 1.9(c) cmt. 6.

Last, Hepworth Holzer contends the district court erred by ignoring facts that supported its claim that the associate attorney did not engage in any inappropriate conduct. In general, it was within the discretion of the district court to weigh the conflicting testimony submitted by each

firm. *Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008) (It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses.). That said, recognizing our discretion to issue an extraordinary writ, *Kerr*, 426 U.S. at 403, we find the district court erred in failing to appropriately balance the competing interests of Bogus Basin/Elam & Burke and Tubbs/Hepworth Holzer in this case. Accordingly, we will exercise our independent discretion to address the issues presented here.

> *e.   Whether the order raises new and important problems, or issues of law of first impression.*

Fifth, Hepworth Holzer argues that the disqualification and gag order will result in extreme prejudice to Tubbs that can only be remedied through the requested extraordinary writ. Because we have never addressed whether a disqualification and gag order can be reviewed through an extraordinary writ, this case presents an issue of first impression. Thus, the fifth and final *Cole* factor is satisfied.

Hepworth Holzer also submits that the district court's disqualification and gag order raises new and important legal issues, not the least of which would be violations of the First Amendment of the Constitution of the United States, because: (1) Tubbs has a First Amendment right to counsel of choice, which includes the right to allow his chosen counsel to speak on his behalf; and (2) Tubbs has a First Amendment right to communicate with, and seek advice from, his chosen counsel. We note that there is a First Amendment right to counsel, but it is seldom articulated in that way. It is more appropriately referred to as "a right to counsel of choice." *See Hart v. Gaioni*, 261 F. App'x 66, 68 (9th Cir. 2007) ("Thus the rule is a reasonable restriction on the First Amendment right to counsel of choice."). However, "[t]his Court will not address constitutional issues when a case can be decided upon other grounds." *State v. Le Veque*, 164 Idaho 110, 115, 426 P.3d 461, 466 (2018) (quoting *State v. Smith*, 161 Idaho 782, 785, 391 P.3d 1252, 1255 (2017)). "It is well established that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case." *City of Sandpoint v. Indep. Highway Dist.*, 161 Idaho 121, 124, 384 P.3d 368, 371 (2016) (quoting *Mullinix v. Killgore's Salmon River Fruit Co.*, 158 Idaho 269, 279, 346 P.3d 286, 296 (2015)). Because we have already ruled that an extraordinary writ is appropriate here, we need not address the constitutional issues raised by Hepworth Holzer.

14

Ultimately, no one at Hepworth Holzer, including the associate attorney, could discern what argument allegedly raised confidential arguments that would merit the far-reaching action taken by the district court. The district court needed to consider the prejudice that would result to Tubbs in disqualifying Hepworth Holzer as his counsel. "The goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *Foster*, 145 Idaho at 32, 175 P.3d at 194 (quoting *Weaver*, 120 Idaho at 697, 819 P.2d at 115) ("whenever possible, courts should endeavor to reach a solution that is least burdensome to the client.").

Tubbs suffered substantial and catastrophic physical injuries that led to him filing the underlying lawsuit. Tubbs' prejudice includes the loss of his long-standing counsel who is familiar with the facts of the case and who undertook representation on a contingent fee basis. It is impractical to conclude that Tubbs retaining new counsel is "a plain, speedy and adequate remedy in the ordinary course of law." The district court's order disqualifying Hepworth Holzer as counsel is reversed.

### D. A new district judge will preside over this case on remand.

One of the realities presented in rare cases like the this one is that "mandamus actions such as the one involved in the instant case 'have the unfortunate consequence of making the (district court) judge a litigant, obliged to obtain personal counsel or to leave h[er] defense to one of the litigants (appearing) before h[er]' in the underlying case." *Kerr*, 426 U.S. at 402–03 (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384–85 (1953). The district judge has unavoidably been made a party to this proceeding and has been represented by independent counsel.

Hepworth Holzer asks that if this case is remanded, that the district judge be disqualified for cause "to ensure that no sense whatsoever of an appearance of impropriety arises in future proceedings . . . ." Hepworth Holzer relies on I.R.C.P. 40(b)(1)(D) as the basis for its motion. That rule provides that "a party to an action may disqualify a judge for cause [when] . . . the judge is biased or prejudiced for or against any party or the subject matter of the action." Even so, "judicial rulings alone can almost never constitute valid basis for bias or partiality motion . . . and opinions formed by the judge on the basis of facts introduced or events occurring in the course of the proceedings . . . do not constitute a basis for a bias or partiality motion . . ." *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 660, 664, 389 P.3d 946, 950 (2016).

Nothing in the district court's reasoning or its final decision establishes a claim of bias. At the same time, we recognize that the district court is now a party in this extraordinary proceeding. The district court has been represented by counsel and filed documents directly opposing Hepworth Holzer's position here – a position which this Court has now generally adopted. In matters of judicial ethics, appearance and reality often converge as one. *Liteky v. United States*, 510 U.S. 540, 565 (1994) (Kennedy, J., concurring) (citing *Offutt v. United States,* 348 U.S. 11, 14 (1954) ("[J]ustice must satisfy the appearance of justice"). Thus, while we make no finding that the district court is biased against Hepworth Holzer in this case, to avoid even the appearance of impropriety we order that the administrative district judge assign a new judge to this case upon remand. This holding is limited to the unique facts presented here and this determination, made via a special writ, should not be viewed as an expanded means of disqualifying a sitting judge throughout a case.

## V. CONCLUSION

Hepworth Holzer's petition for mandamus is granted. We order the following relief:

1. The disqualification and gag order dated March 30, 2021, and all related subsequent orders are vacated;

2. Hepworth Holzer may continue to serve as counsel of record for Tubbs, should he elect to have the firm continue to serve in that capacity;

3. Hepworth Holzer is allowed to communicate with Tubbs or his future counsel without limitation, either as counsel or as former counsel;

4. The Memorandum in Support of the Motion for Reconsideration, previously stricken from the record by the district court, is reinstated;

5. The case is remanded for further proceedings on the motion for reconsideration before a new district judge; and

6. The administrative district judge shall appoint another qualified district judge in the judicial district to oversee further proceedings pursuant to Idaho Rule of Civil Procedure 40(d).

Justices STEGNER, MOELLER and Justices *pro tem* TROUT and HORTON, CONCUR.

16